**People of the State of Illinois, Plaintiff-Appellee, v. Jesse Williams and Arthur Sawyer, Defendants-Appellants.**

Gen. Nos. 53,473, 53,474.

First District, Second Division.

December 30, 1969.

 ██ 

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Both defendants were found guilty at a bench trial of the crime of burglary; in addition, defendant Sawyer was found guilty of the crimes of aggravated battery and intimidation. Williams was sentenced to a term of one year to three years in the penitentiary and Sawyer to a term of two years to five years in the penitentiary. On appeal they contend that they were not proven guilty beyond a reasonable doubt.

Mrs. Lovina Byrd testified that in the latter part of March 1967 the defendants sold her a television for $40. At approximately 8:00 a. m. on April 8, 1967, she left her basement apartment on South Kenwood Avenue in Chicago to go shopping. When she returned about an hour later she found that the apartment door and a wire-screened window had been broken open and that the television was missing.

Mrs. Byrd testified that she was introduced to the defendants by Mr. Roosevelt Moore, who lived on the third floor of the building in which she resided; the introduc-

tion was made for the purpose of effecting the sale of the television. Mrs. Byrd testified that she went to Moore's apartment after she discovered the television missing and engaged him in conversation. The following day Moore informed Mrs. Byrd that defendant Williams was asleep in Moore's apartment; the police were called and Williams was arrested.

Mrs. Byrd further testified that on April 24, 1967, after she had sworn out the complaints against the defendants for the burglary of the television, defendant Sawyer came to her apartment about 2:00 a. m., kicked in the apartment door, struck her in the stomach (which aggravated a kidney condition) and warned her not to testify against Williams. This was also reported to the police.

Roosevelt Moore, a witness for the People, testified that he was sixty years of age and had known the defendants for three or four years prior to April 1967. Defendant Sawyer had lived with Moore in the Moore apartment on occasions when he had nowhere else to live.

Moore testified that he was present when the television was sold by the defendants to Mrs. Byrd in "March or April" of 1967 and that Mrs. Byrd gave them part payment for the set. He further testified that at approximately 8:00 a. m. on April 8, 1967, he observed, from his apartment window and rear door, defendant Williams remove a screen from and enter a Byrd apartment window and defendant Sawyer enter the apartment through the rear door. The witness testified that he later observed the defendants emerge from the Byrd apartment carrying the television. Moore stated that Mrs. Byrd came to his apartment after she arrived home and had a conversation with the witness.

Moore further testified that on April 10, 1967, between 8:30 and 9:00 p. m., defendant Sawyer came to his apartment with a pistol, beat him, and warned him not to testi-

fy at the trial of Williams. On further examination, the witness stated that he was unable to remember the date of the beating and could not say whether it was on April 24th.

Tienna Marriah testified that she was in the Moore apartment on April 24th when defendant Sawyer kicked open the apartment door, brandished a pistol and told Moore to "take a walk" with him. Miss Marriah testified that defendant Sawyer then kicked and beat Moore, and threatened to kill him if he "went to court." She further testified that she had seen Sawyer in the Moore apartment on two or three occasions earlier that month.

Chicago Police Detective Minter Bennett testified that defendant Williams was arrested on April 10, 1967, pursuant to a complaint signed by Mrs. Byrd. He further testified that he saw both Mrs. Byrd and Mr. Moore on April 25th. Mrs. Byrd was holding her stomach and related to the officer that defendant Sawyer struck her the day before and warned her not to testify against Williams. The officer further testified that Moore, who also complained that he had been beaten by Sawyer, was bleeding from the mouth, had bruises about the face, and complained of pains in the chest and groin.

Defendant Sawyer testified that he sold the television to Mrs. Byrd in March 1967 for $50, and that she paid $30 on account and promised the balance later. He stated that on April 8th he went to the Byrd apartment to collect the $20 balance, but was informed by Mrs. Byrd that she did not have the money at the time. Sawyer testified that he then left the apartment. He further testified that on April 24th he did not have occasion to see Mrs. Byrd and occupied himself elsewhere that entire day. Sawyer denied taking the television from the Byrd apartment, and denied beating or intimidating Mrs. Byrd or Roosevelt Moore.

Defendant Williams testified that he and Sawyer sold the television to Mrs. Byrd. He denied being in the Byrd

apartment on April 8th and denied taking the television from that apartment.

Both defendants were indicted for the burglary of the Byrd apartment. Two additional indictments were returned against defendant Sawyer, one charging him with intimidation of Mrs. Byrd, and the other with the aggravated battery and the intimidation of Roosevelt Moore.

Defendants contend that they were not proven guilty of the crime of burglary beyond a reasonable doubt inasmuch as the evidence fails to establish that they entered the Byrd apartment with the intent to steal anything. They argue that Mrs. Byrd owed them a balance of $20 for the television, and that their entry into her apartment is consistent with the theory that they did so with the impression, albeit erroneous, that they had a right to repossess the television. They further state that their conduct is not consistent with the intent to commit a burglary in that they were known in the neighborhood, entered the apartment at a time of day when it would be likely that they would be noticed, and removed a large, bulky article from the apartment, which was the only thing taken.

■ ■ The People's evidence showed that the defendants entered the Byrd apartment without permission and while no one was there by forcing open a window and a door, and removed the television therefrom. Defendants' evidence consisted of a flat denial of entry into the apartment and removal of the television. The evidence presented a case of credibility for the trier of fact. (People v. Wollenberg, 37 Ill2d 480, 484, 229 NE2d 490.)

Defendants' new theory, advanced for the first time on appeal, that they did in fact enter the apartment but did so only with the erroneous impression that they had a right to repossess the television, is unavailing.

In People v. Uselding, 107 Ill App2d 305, 247 NE2d 35, the defendant was found guilty of attempted robbery. One of his contentions on appeal was that the intended

345

victim owed him a prior debt of $4, and that the defendant merely intended, with the use of a weapon, to collect that debt and did not demand more money from the alleged debtor. This Court, rejecting that contention, stated at pages 309–310 of the opinion:

> "The argument proceeds from the false premise that use of force to collect a debt is lawful. The law does not permit such self-help. [The crime] is as defined, and had the defendant obtained the money, either by [the intended victim] giving money to him after the use and threat of force, or by forcibly snatching money from the person of [the intended victim,] he would have committed [the crime]."

Defendants attempt to distinguish the Uselding case on the ground that the intended victim there denied owing the defendant the money and that the matter was therefore put into issue, whereas here there is evidence that a balance was due to defendants from Mrs. Byrd on the purchase price. First, the only evidence that there was a balance owing at the time the television was removed from the Byrd apartment comes from the defendants. Mrs. Byrd testified only that she had purchased the set for $40; Mr. Moore testified that Mrs. Byrd made part payment when the set was purchased in March, but did not testify whether she did or did not make any payments thereafter. We think that the quoted pronouncement in Uselding is applicable to the facts of the instant case.

■ ■ With regard to the circumstances which defendants argue militate against the intent to commit a burglary, it may be said generally that improbabilities or conflicts in the evidence do not require reversal. People v. Ellzey, 96 Ill App2d 356, 358–359, 239 NE2d 304. The assertions that it is unlikely that one would commit a crime in his own neighborhood and that defendants

entered the Byrd apartment during the daytime hours and removed only a large television were for evaluation by the trial judge. People v. Hampton, 103 Ill App2d 57, 243 NE2d 371.

The cases of People v. Soznowski, 22 Ill2d 540, 177 NE2d 146, and People v. Hutchinson, 50 Ill App2d 238, 200 NE2d 416, deal with the nature of the intent required in a burglary where nothing has been removed from or disturbed on the premises unlawfully entered. (See People v. Johnson, 28 Ill2d 441, 442–444, 192 NE2d 864.)

It is also claimed that Moore's conduct is not consistent with that of a person who witnessed a burglary, inasmuch as he knew both defendants prior to the burglary and testified that Sawyer was living with him on the date of the burglary. The witness was somewhat confused as to the various dates involved, as the trial judge noted. The questions propounded with regard to Sawyer's residency in the Moore apartment were initially general in nature as far as dates were concerned, as were the answers thereto; then, when asked if Sawyer was living with the witness on April 8th, the witness replied, "That is the date it was." As with the fact that Moore had known the defendants a long time prior to the burglary, these matters were for resolution by the trier of fact.

■ ■ Moore's confusion as to dates affects only his credibility as a witness. He clearly testified as to the facts surrounding the burglary, the intimidation and the beating. When his overall testimony is viewed in the light of the testimony of Mrs. Byrd, Miss Marriah and Officer Bennett, there was ample evidence to support the People's position that Moore was intimidated and beaten on April 24th.

The cases cited by the defendants for the proposition that a conviction will be reversed where it rests upon doubtful, vague and uncertain testimony are inapposite

on their facts. (See People v. Fiorita, 339 Ill 78, 170 NE 690; People v. Kidd, 410 Ill 271, 102 NE2d 141.)

The judgments are affirmed.

Judgments affirmed.

LYONS, P. J. and McCORMICK, J., concur.