THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE CLERK, Defendant-Appellant.

First District (3rd Division)   No. 77-1507

Opinion filed February 7, 1979.

---

[1] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon and John Thomas Moran, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ann Callum, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The defendant, Eugene Clerk, was arrested and charged in an amended complaint with aggravated assault, criminal damage to property, unlawful use of a weapon, possession of burglary tools and burglary with intent to commit a felony. After a finding of probable cause was entered in a preliminary hearing on the charges of burglary and possession of burglary tools, the prosecutor also filed an information, which contained counts of burglary with intent to commit rape, attempt rape, and possession of burglary tools. The defendant's motion to quash the information's charges of burglary with intent to commit rape and attempt rape was sustained, but the State was given leave to add to the information an additional count charging burglary with intent to commit theft. Then, the State dropped the information, but filed an indictment charging the defendant with burglary with intent to commit rape, burglary with intent to commit theft, attempt rape, and possession of burglary tools.

The defendant's motion to quash his arrest and suppress evidence, as well as his motion to suppress his identification, were denied, and the defendant was found guilty in a bench trial of possession of burglary tools, of burglary with intent to commit theft, and of burglary with intent

to commit rape. He was acquitted on the attempt rape charge. The defendant was sentenced to 4-12 years on each count of burglary and 1 year to 1 year and a day for possession of burglary tools, with all sentences to run concurrently.

On appeal, the defendant asserts: (1) the trial court erred in allowing the State to proceed against him by indictment on charges which the court did not permit to be included in the information previously filed because probable cause had not been shown, (2) the procedure resulting in the defendant's pretrial identification was so suggestive and conducive to error that it violated his due process rights, (3) his conviction for burglary with intent to rape is legally inconsistent with his acquittal for attempt rape, (4) his conviction for possession of burglary tools was supported by insufficient evidence, (5) the evidence did not support his conviction for burglary with intent to commit theft, and (6) the trial court erred in finding him guilty of two burglary counts which arose out of the same conduct.

Before trial, two witnesses testified at the hearing on the motion to quash and suppress. The first witness, Sergeant George Nance, an East Chicago Heights police officer, testified that, with another officer, he arrested the defendant between 7 and 7:15 a.m. and placed him in the back seat of a police car. The arrest took place less than one-half hour after the officer left the victim's home. When the officers left her home, the victim appeared frightened and upset. The place of the arrest was 6 blocks from the victim's house and 3 or 4 blocks from the East Chicago Heights police station; Sergeant Nance stated that the trip to the police station was shorter than going to the victim's home.

The officers then returned to the victim's home. Sergeant Nance went into her home, leaving the defendant outside in the car. Sergeant Nance showed the victim a knife that had been taken from the defendant and asked her if she recognized it. She replied, "Yes, this is the knife!" Nance told the victim that he had a suspect, but did not tell her that the defendant was sitting in the car outside, since he wanted to see if she would come out on her own and identify the defendant. Nance stated that the victim did not come out to the car to look at the defendant but to go to the police station. Nance stayed in the house with the victim for a few minutes until she calmed down a bit. Nance and the victim then left the house to go to the police station. When she arrived at the police car, she stated, "That's him."

The second witness at the hearing on the motion to quash and suppress was the victim. She testified that the police officers arrived around 6:55 or 7 a.m. She said that she had reported the break-in of her home and the two officers had responded within 5 minutes, staying there 4 to 5 minutes. She described the individual to the officers as a masked or

semi-masked individual. She stated that he was not too tall, and was dressed in a green jacket and dark pants, and had "nappy" hair. She also told the police that the offender had a brown knife, a screwdriver, and a flashlight in his hands.

She said the police officers returned 5 to 10 minutes after leaving: Officer Nance came into the house, and had a conversation with her. Officer Nance showed her a knife, which she identified. He then told her to come down to the police station in his car, but did not tell her that they had arrested anyone. She saw for herself that someone was in the vehicle, and when she got in the car, she knew that it was the offender, and identified him. She sat in the back seat with her sister and the defendant, who was handcuffed at the time and was wearing a green jacket, T-shirt and dark pants.

At trial, the victim testified that she lived in East Chicago Heights with her mother, her brothers and sisters, and her 3-month-old baby. At 7 a.m., wearing panties and a bra, she was asleep with her baby on the couch in the front room on the first floor. The rest of her family was upstairs. Her baby started to move, and when she awoke the defendant was standing over her. He was wearing a green jacket, black pants, and a white T-shirt. His hair was not combed. He also had taken her little brother's shirt, ripped it, and put it over his face. The defendant's face was covered from the middle of the nose on down, and he was standing over her holding a long knife with a brown handle. The defendant held this knife at her throat, and also had a screwdriver and flashlight in his hands.

The defendant told her to get up and she did. When her baby started crying, the defendant told her to keep the baby quiet or he would kill her. The defendant then told her to lie on the floor, and she did. The defendant stood over her, unbuckling his belt and unzipping his pants. The defendant's mask slipped when he was getting ready to undo his pants, so she was able to see his nose and eyes. She said the lighting conditions were good and that she was able to see the defendant clearly.

She testified that at this point her mother started to get up and that there was some noise upstairs. The defendant then left through the back door and told her that if she called the police he would kill her. The defendant ran out on the street in front of her home, where she saw him again as she ran to the front door and stepped out on the porch. The balance of her testimony on direct examination duplicated the testimony which she gave at the hearing on the motion to suppress and which is set forth above.

On cross-examination the victim testified that the defendant never took anything from the house and that the defendant never told the victim that he would. The defendant also never told her that he wanted to have

sexual intercourse with her. She also stated that when she first saw the defendant, he was over her on his knees, up against the couch; she was looking at him from under a blanket. The knife held by the defendant was open and she could see the handle at all times. She told Sergeant Nance that the knife was long and had a brown handle, but she did not describe the flashlight or the screwdriver. She said the offender had brown eyes and his hair was unusual; it was "nappy" and was not combed. She stated that she was nervous and kept her eyes open at all times. She did not try to resist the defendant. She saw that the defendant was wearing black pants and a green jacket with pockets on the side. She testified that she had not seen a jacket this color before.

The next witness for the State, Sergeant Nance, testified that he responded to a call, arrested the defendant and searched him. A knife, a screwdriver and a flashlight were taken from the defendant by his partner, in Nance's presence. The knife and screwdriver were admitted into evidence. The knife was removed from the defendant's pocket. Nance said he had not seen other knives exactly like this one.

The defendant testified in his own behalf. He stated that on the morning in question he awoke, washed and fixed breakfast. He got his jacket and then started toward his future wife's house, a block from his home, to watch their son. When he went across the street, Sergeant Nance pulled up and said, "Get in the car." At that time of the morning there were normally people on the street corner waiting for a bus. The defendant stated that he never entered the victim's residence nor attempted to commit a burglary. The defendant had prior convictions for burglary in 1973 and 1972 and a conviction for criminal damage to property.

The defendant first argues that his conviction for burglary with intent to commit rape should be reversed because it was based on an improper and invalid indictment. He argues that section 7, article I of the Illinois Constitution entitled the State to only one probable-cause determination on one set of facts. Therefore, he contends, the State should have sought appellate review after the two counts of the information charging burglary with intent to commit rape and attempt rape had been quashed, instead of seeking an indictment on those charges. The defendant's argument is refuted by recent case law.

Section 7, article I of the Illinois Constitution provides in part:
"No Person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause."

In this case, probable cause for burglary with intent to commit a theft and

possession of burglary tools was established at the preliminary hearing and also later in the proceeding before the grand jury. And probable cause for burglary with intent to commit rape and attempt rape were established to the satisfaction of the grand jury. Under the supreme court's recent interpretation of this article of the constitution, there was nothing improper in the utilization of both methods for proceeding against the defendant on the charges brought here. *People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793; *People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710; See also *People v. Hunt* (1975), 26 Ill. App. 3d 776, 326 N.E.2d 164.

■■ As the *Creque* court stated, quoting *Kent* with approval:

"In our opinion the language of the constitutional provision, as well as the history of its evolution, negates any thought that its purpose was to attach finality to a finding of no probable cause, or to establish mutually exclusive procedures so that grand jury proceedings would be barred if an accused had been discharged upon preliminary hearing." (*Creque*, at 526.)

The court in *Kent* reversed the trial judge's dismissal of an indictment which was returned after an earlier preliminary hearing in which there was a ruling of no probable cause. And in *Creque*, the supreme court reversed a trial judge who dismissed an indictment because the prosecution there failed to advise the grand jury that a judge previously had found no probable cause. Accordingly, we find no error in what transpired in the instant case, where a grand jury returned an indictment for burglary with intent to commit rape and attempt rape—charges on which a circuit court judge in a preliminary hearing procedure had previously found no probable cause.

The defendant also argues that the instant case does not meet the standards for a justifiable showup established by *People v. McMath* (1970), 45 Ill. 2d 33, 256 N.E.2d 835. There, the victim, who was robbed at gun point of her purse by a man wearing a stocking cap over his face, ran to a nearby service station and called the police. The police observed the defendant speeding and chased and caught him. When an officer noticed a toy pistol and stocking cap on the front seat, and a purse with the victim's identification in the gutter near the driver's side of the car, the defendant was taken immediately to the gas station, where the victim identified the defendant. The supreme court held that this confrontation with the victim was justified because prompt identification was necessary to determine whether the defendant was the offender or whether the officers should continue their search.

■■ Here, the defendant broke into the victim's home and accosted her at knife point. He was arrested shortly after the burglary six blocks from the crime scene, wearing clothing and carrying tools described by the victim. The victim estimated the time from the phone call to the police until the

return of the police with the defendant as 15 to 20 minutes. Sergeant Nance estimated that it was less than one-half hour, a little while from the time he left the victim's home until the defendant was placed in the squad car. The defendant was immediately taken to the victim's home, where he was identified as the offender when the victim came out to go to the police station. The showup in the instant case was justified by the need for prompt identification to determine whether the defendant was the offender or whether the officers should continue their search. *McMath.* See also *People v. Bracey* (1977), 52 Ill. App. 3d 266, 367 N.E.2d 351.

■■ And even if the identification procedure did not satisfy *McMath*, the in-court identification had a basis independent of the showup and was therefore reliable.

■■ The defendant argues that on the basis of the criteria listed in *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, and used by the supreme court in *People v. Camel* (1974), 59 Ill. 2d 422, 322 N.E.2d 36, his identification was conducive to a substantial likelihood of mistake. Those criteria are: (a) opportunity of the witness to observe the criminal at the time of the crime; (b) witness' degree of attention; (c) accuracy of the witness' prior description; (d) level of certainty demonstrated by the witness at the confrontation; (e) length of time between the crime and the confrontation.

■■ Here, the victim had ample opportunity to observe the defendant at the time the crime was committed, under good lighting conditions at close range. Five minutes elapsed between the time the victim first saw the defendant and the time that noises upstairs caused the defendant to flee. The victim spent all of this time with the defendant, at close range. The lighting conditions were good since it was 7 a.m. and sunny. The defendant wore a shirt over his face, but when he dropped the shirt, the victim was able to see his face clearly. She also saw him a second time as he fled. The victim stated that she kept her eyes open at all times; her attention was focused on the defendant the entire time. The defendant was never out of the victim's sight and was always situated quite close to the victim, kneeling or standing over her. The victim's description of the defendant matched his appearance when he was arrested. The victim told the police the offender had a brown knife, a screwdriver and a flashlight and these items were found on his person when he was apprehended a short time later. And the victim made a positive identification of the defendant in the police car. There was no hesitation or uncertainty on her part. Only a short time elapsed between the crime and the confrontation between the victim and the defendant. Thus, because the five criteria set out in *Neil v. Biggers* are met in the instant case, we conclude that the victim's identification of the defendant was

reliable. See also *People v. Garrett* (1977), 51 Ill. App. 3d 704, 366 N.E.2d 517.

The defendant also contends that the trial court's findings of not guilty of attempt rape and guilty of burglary with intent to commit rape were legally inconsistent. In *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, the court held that there is no legal inconsistency in findings of acquittal and conviction of crimes composed of different elements arising out of the same set of facts. The crimes here, attempt rape and burglary with intent to commit rape, consist of different elements. Section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a)) provides: "A person commits an attempt when, with the intent to commit a specific offense, he does any act which constitutes a substantial step toward commission of that offense." And section 19—1(a) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a)) states: "A person commits burglary when without authority he knowingly enters * * * a building, * * * with intent to commit therein a felony or theft." Therefore, attempt rape requires intent to commit rape and a substantial step toward commission of rape, while burglary with intent to commit rape requires entering with intent to commit rape.

Here, the defendant entered the victim's home without authority and placed a knife to her throat. The defendant then told the victim to lie on the floor, which the victim did. The defendant stood over her and started to undo his pants, unbuckling his belt and unzipping his pants. When he heard noise upstairs, the defendant fled. Although the defendant's actions showed his intent to commit rape, they did not amount to a substantial step toward the commission of rape. Accordingly, the findings on the charges of attempt rape and burglary with intent to commit rape are legally consistent.

The defendant further argues that there was no evidence that the knife, screwdriver and flashlight were used or intended for use by the defendant as tools with which to commit a burglary. However, we believe that the defendant was proven guilty beyond a reasonable doubt of possessing burglary tools. He broke into the victim's home, stood over the victim holding a flashlight, screwdriver and knife in his hands, and was arrested shortly afterward with these items in his possession. While there is nothing inherently illegal about the possession of a screwdriver, flashlight and knife, the suitability of tools for a breaking render it immaterial that they also could be used lawfully. (*People v. Faginkrantz* (1960), 21 Ill. 2d 75, 171 N.E.2d 5.) And in cases involving tools which were originally designed and intended for an innocent purpose, the intent of the possessor becomes a most important element. The offense is usually complete when tools are possessed with intent to burglarize or for other

felonious purpose. *People v. Taylor* (1951), 410 Ill. 469, 102 N.E.2d 529.

In the instant case the victim's home was burglarized by the defendant. The defendant's felonious intent and use of the tools in his possession for the purpose of committing a burglary were shown. The defendant's reliance on *People v. Spencer* (1973), 10 Ill. App. 3d 229, 294 N.E.2d 17, is misplaced. In *Spencer,* the defendant was found with two pocketknives in his possession between inner and outer doors of an apartment building. However, there was no evidence that the doorway had been locked or of forcible entry, and the defendant satisfactorily explained his presence in the vestibule, as well as his possession of the two pocketknives, with uncontradicted testimony.

The defendant next contends that insufficient evidence was introduced to support his conviction for burglary with intent to commit a theft. However, it is unnecessary to decide this issue, because, for the reasons stated below, the conviction of burglary with intent to commit theft must be vacated.

██ The State agrees that the defendant is correct in contending that the two counts of burglary on which the defendant was convicted are based on the same physical act of the defendant—the unlawful entry into the victim's home. Even though there may have been sufficient evidence to support both the charge of burglary with intent to commit theft and the charge of burglary with intent to commit rape, one of these judgments of conviction must be vacated in light of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, and *People v. Scott* (1969), 43 Ill. 2d 135, 251 N.E.2d 190. Accordingly, we reverse the defendant's conviction of burglary with intent to commit theft, while affirming his convictions for burglary with intent to commit rape and possession of burglary tools.

Judgments affirmed in part and reversed in part.

McNAMARA and JIGANTI, JJ., concur.