THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY RAY TOOLATE, Defendant-Appellant.

Fourth District   No. 4—82—0683

Opinion filed May 26, 1983.

14

WEBBER, P.J., dissenting.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

After a jury trial, defendant Larry Toolate was convicted of residential burglary with intent to commit rape (Ill. Rev. Stat. 1981, ch. 38, par. 19—3(a)) and upon consideration of his criminal record was sentenced to a term of 12 years' imprisonment. While defendant presented some evidence of alibi, the single issue argued upon appeal is whether or not the evidence sufficiently proved that the entry by defendant was made with the intent to commit rape.

The record discloses the following pertinent facts. Complainant, a single woman with two children, testified that on the night of June 16, 1982, she put her children to bed in her bed sometime after midnight. Before retiring, she lowered the window next to the front door, leaving it open about two inches, and checked the screen lock on the window. She closed the curtains and checked the double locks on both downstairs doors. She fell asleep around 2 a.m.

At about 3 a.m. she was awakened by a hand pulling on her left side. She was sleeping on the side of the bed furthest from the bedroom door. There was a foot and one-half between the bed and the wall on that side. She looked up thinking it was her five-year-old pull-

ing her, but the child was not standing there. She reached across the bed and felt the two-year-old next to her and the five-year-old on the opposite side. There was a lamp on the night stand at her bedside. She had left the bottom portion of the lamp on. This light was off and, thinking the bulb was burned out, she tried the switch. It did not work. She then thought that someone was in the apartment.

She lifted the sleeping two-year-old and slid to the middle of the bed, placing the two-year-old at the head of the bed closest to the door. She picked the five-year-old up, asking her whether she had to go the bathroom and telling her she would take her to the bathroom. She continued talking as she walked and turned on the bedroom light, hall light, and bathroom light. She put the child down behind her in the bathroom and turned to face the bedroom.

She then saw a face looking over the side of the bed. She took several steps toward the bedroom. A man, identified as the defendant, stood up. She said, "I knew somebody else was in here with us." He stood up and responded, "That makes two of us that knows that now, doesn't it?" She said, "You get out of here; you get out of our apartment now." He looked both ways and said, "I'm going. I'm going. I'm gone." He jumped over the bed and ran down the steps, passing within three inches of the complaining witness. She looked to make sure the children were all right and then ran down the steps behind him telling him to get out and leave them alone. He ran out the kitchen door and slammed it.

Police were called to the apartment. The screen on the window next to the front door had been cut. Certain bedroom furnishings had been moved after the complaining witness had gone to bed. A stand from beneath a window and a hope chest from the end of the bed had been moved to close off the foot-and-one-half-wide space between the bed and the wall opposite the bedroom door. The night stand lamp at the head of that space had been unplugged.

The complaining witness was able to give police a positive identification because she had seen the defendant riding a motorcycle around her neighborhood at different times. He had spoken to her five-year-old when the complaining witness and the child were outside at about 3 p.m. that day.

The complaining witness testified that, as the defendant ran from her bedroom, she observed he was wearing a navy blue lightweight baseball-type jacket, zipped closed, white pants and tennis shoes. Police arrested the defendant about one hour after they answered the call, and less than an hour and one-half after the incident. He was arrested at the residence of Kevin Weiss about eight blocks from the

apartment of the complaining witness.

When placed under arrest and told to dress, he put on a pair of white pants, which were lying next to him, a shirt and tennis shoes. Weiss testified that when he saw the defendant at about 2 a.m., the defendant was wearing tan or off-white jeans, a blue short-sleeved mesh shirt, tennis shoes, and a blue jogging-type sweat jacket with his nickname "Tool" printed on the back in large white letters.

The State rested its case.

Marilyn Weerts testified on behalf of the defendant. She stated that on the night of June 16, 1982, defendant was with her at her home from sometime after 2 a.m. until she drove him to the Weiss residence at about 3 or 3:15 a.m. The drive took about eight minutes. She saw him open the back door to enter.

Residential burglary consists of entering, with or without force, any dwelling, during the day or the night, with intent to commit a felony or a theft. The gravamen of the offense is the felonious intent with which the building is entered. (*People v. Maffioli* (1950), 406 Ill. 315, 94 N.E.2d 191.) In this case the prosecution must prove that defendant entered the home of the complaining witness with the intention of committing rape. The defendant's felonious intent to commit rape may be inferred from his words, actions, violence, and other conduct, and it is within the province of the trier of fact to consider all of the facts and circumstances of the case in determining the question of intent. *Maffioli.*

Evidence presented included a cut in the screen next to the door, and unauthorized entry to a locked apartment, and the movement of certain bedroom furnishings so that the area next to the sleeping woman was closed off. The only lamp in her reach was unplugged and, at 3 a.m., she was awakened by a hand from that closed off area pulling on her.

Nothing else in the apartment was missing or disturbed.

The acts of this case are somewhat less aggressive from those in *People v. Tackett* (1980), 91 Ill. App. 3d 410, 414 N.E.2d 748. In that case the defendant tried to conceal his identity and restrict the movement of the complainant. He seized her, wrestled her to the floor, placed his hand over her mouth and attempted to unbutton her shirt. He then departed when children in other rooms of the house began crying. See also *Maffioli.*

In *People v. Clerk* (1979), 68 Ill. App. 3d 1021, 386 N.E.2d 630, cert. denied (1979), 444 U.S. 981, 62 L. Ed. 2d 408, 100 S. Ct. 484, and *People v. Tackett* (1980), 91 Ill. App. 3d 410, 414 N.E.2d 748, the reviewing courts pointed out that the quantum of proof required to

prove burglary with intent to commit rape is not the same as proof required where the charge is attempted rape. In each case the court, at bench trial, found the defendant not guilty of attempted rape, but guilty of burglary with the intent to commit rape.

In *Clerk,* it was contended that such findings were inconsistent. That opinion set out the respective statutes and stated:

> "Therefore, attempt rape requires intent to commit rape and *a substantial step toward* commission of rape, while burglary with intent to commit rape requires entering with intent to commit rape." (Emphasis added.) 68 Ill. App. 3d 1021, 1029, 386 N.E.2d 630, 635.

In *Tacket,* the court stated:

> "As the trial court found, the fact that the defendant did not perform a substantial step toward the completion of the rape does not preclude a finding by the court that he intended to commit rape. The activity needed to indicate an intent to rape is less than that required to prove the completion of a substantial step toward the commission of rape necessary to establish an attempt rape. [Citation.]" 91 Ill. App. 3d 410, 413, 414 N.E.2d 748, 750.

This case is easily distinguishable from *People v. Matthews* (1976), 44 Ill. App. 3d 342, 358 N.E.2d 84, wherein the conviction for burglary with intent to rape was reversed. In that case, the defendant, who fixed the clothes dryer in the complainant's home some months earlier, strolled into her home one afternoon via an unlatched screen door, and made a lewd offer. She left to call the police and he undressed from the waist down. That was how the police found him. This evidence was held insufficient to prove his intent to commit an act of intercourse through the use of force.

In weighing the evidence, the trier of fact is not required to disregard the natural inferences that flow normally from the evidence. (*People v. Bell* (1981), 96 Ill. App. 3d 857, 421 N.E.2d 1351.) A reviewing court will not disturb a conviction unless it is manifestly contrary to the weight of the evidence. (*People v. McCombs* (1968), 94 Ill. App. 2d 308, 236 N.E.2d 569.) Given the circumstances of this case, we find that the fact that defendant fled when discovered and told to leave does not require reversal of the conviction.

Affirmed.

GREEN, J., concurs.

PRESIDING JUSTICE WEBBER, dissenting:

I respectfully dissent from the conclusion reached by my brothers that an intent to commit rape was proved beyond a reasonable doubt.

The facts demonstrate that the complainant was asleep in a bed with two children. She was awakened by someone touching her and discovered the defendant peering over the side of the bed. However bizarre the defendant's conduct was, it falls far short of proving beyond a reasonable doubt that he entered the premises with the intent to commit rape. The origin of the touching is even subject to doubt; it might well have been caused by one of the children in the bed; even if it be assumed that it was in fact the defendant who did the touching, it is equally plausible that he was a fetishist of some sort whose quirk was to observe sleeping females and to stroke them gently. Rape is by nature forceful, and no force has been shown here.

It is true that the intent in burglary nearly always is shown by inference gleaned from the circumstances and especially by what occurs after the entry. In the case of larcenous intent the supreme court has said:

> "Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose." *People v. Johnson* (1963), 28 Ill. 2d 441, 443, 192 N.E.2d 864, 866.

"Theft as the most likely purpose" is simply a logical extension of the fact that at early common law burglary was viewed as robbery of a dwelling. Early on, this concept was expanded to include other felonies, and from the origin of this State the burglary statute included a comprehensive list. For example:

> "Every person who shall, in the night time, wilfully, and maliciously, and forcibly, break and enter *** into any dwelling *** with intent to commit murder, robbery, rape, mayhem, larceny, or other felony, shall be deemed guilty of burglary ***." Rev. Ill. Laws 1833, sec. 60, at 181-82.

The 1961 codification of the criminal law eliminated the list of offenses and substituted simply "with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1981, ch. 38, par. 19—1.) Thus, theft as the

intent in burglary occupies a special status beginning with its common law origin down through modern times. Such cannot be said for "other felony." I am not aware of any authority raising any presumption about any felony other than theft. It follows that the proof is more difficult when the charge is some felony other than theft, and that proof simply was not present here.

Other courts have grappled with this problem. In *People v. Hutchinson* (1964), 50 Ill. App. 2d 238, 200 N.E.2d 416, the defendant parked his car in broad daylight outside the premises, entered them, and remained for about five minutes. The place was not ransacked and nothing was found missing. Defendant was charged with burglary and convicted in a bench trial. The appellate court reversed, saying, "We believe there are enough 'inconsistent circumstances' [*Johnson*] here to negate the inference of an intent to commit larceny sufficient to sustain a conviction of burglary." 50 Ill. App. 2d 238, 242, 200 N.E.2d 416, 418.

*Hutchinson* has been distinguished on a number of occasions (*e.g., People v. Martin* (1966), 77 Ill. App. 2d 183, 222 N.E.2d 180; *People v. Jackson* (1968), 98 Ill. App. 2d 296, 240 N.E.2d 482; *People v. Williams* (1969), 118 Ill. App. 2d 341, 255 N.E.2d 44; *People v. Blake* (1971), 1 Ill. App. 3d 689, 274 N.E.2d 499; *People v. Sigman* (1976), 42 Ill. App. 3d 624, 356 N.E.2d 400), but always on a factual basis. The "inconsistent circumstances" of *Johnson* still stands.

Nor can the failure to prove an intent to rape yield some other felonious intent sufficient to sustain the conviction. In *People v. Soznowski* (1961), 22 Ill. 2d 540, 177 N.E.2d 146, the defendant was charged with assault with intent to commit rape and burglary with intent to commit theft. The victim was awakened in the night by someone beating on her face. She screamed and the defendant fled and was immediately apprehended. In a bench he was found not guilty of assault with intent to commit rape but guilty of burglary with intent to steal. The supreme court reversed, saying:

> "The trial judge was puzzled, as are we, with the purpose of the defendant. He apparently found in the acts of the defendant an insufficient basis for inferring an intent to commit rape and dismissed the count charging an assault with intent to commit rape. But it does not necessarily follow, as the State seems to argue, that, because the defendant did not intend rape, he must, therefore, have intended larceny." 22 Ill. 2d 540, 544, 177 N.E.2d 146, 148.

In short, even though it may be assumed that an entry is not "purposeless" (*Johnson*), the purpose alleged in the charging docu-

ment must be proved; and if not proved, it cannot be transmogrified into a generalized felonious purpose sufficient to sustain a conviction. That is exactly what the facts in the instant case demonstrate. All of the evidence, circumstantial and direct, inferential or otherwise, taken most favorably to the State, does not establish an intent to rape. The jury obviously took an attitude of he-was-up-to-no-good, even though it was unable to pinpoint the conduct.

In a larger sense, this case demonstrates some of the deficiencies of the burglary statute. Either the requirement of felonious intent should be eliminated, or the intent should be broadened to include any illegal act. The present statute puts both the State and the defendant in a quandry. The State must elect and prove some felonious intent, depending largely upon circumstantial evidence. The defendant may have a good defense, *e.g.*, intent only to commit some misdemeanor, but must run the risk of taking the stand to establish it. An ancient doctrine has become so barnacled with age as to create serious legal problems; its accretions over the years, *e.g.*, residential burglary in 1982 (Ill. Rev. Stat. 1981, ch. 38, par. 19—3), have created a labyrinth through which few can tread with equanimity of mind. It is high time that the legislature looked hard and long at this statute in view of present-day conditions.

I would reverse the conviction.