(No. 58542.─

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LARRY TOOLATE, Appellant.

*Opinion filed March 23, 1984.*

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Anthony B. Cameron, State's Attorney, of Quincy (Mark L. Rotert and Kenneth A. Fedinets, Assistant At-

torneys General, of Chicago, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

The defendant was convicted of residential burglary with intent to commit rape after a jury trial in the circuit court of Adams County. The conviction was affirmed on appeal by a divided court (115 Ill. App. 3d 13), and the defendant's petition for leave to appeal to this court was allowed (87 Ill. 2d R. 315).

The issue in this appeal is whether the evidence establishes beyond a reasonable doubt that the defendant, Larry Toolate, was guilty of the offense with which he was charged. Its resolution is complicated because the evidence is scant.

The defendant broke into the home of the complaining witness (Debbie Sue) in Quincy at about 3 a.m. Debbie Sue was sleeping in an upstairs bedroom with her two daughters, ages five and two; she was on the side of the bed closest to the wall and farthest from the door, and was awakened by a pull on her left side. Discovering that a lamp which she had left burning was no longer on, she got out of bed on the opposite side from where she had been asleep, switched on a bedroom light and the bathroom light and then turned around to look into the bedroom. She saw a man looking over the side of the bed, and as she moved back into the bedroom she saw that he was wearing a dark blue baseball jacket and a pair of white pants. Debbie Sue said, "I knew somebody else was in there with us." The man replied, "That makes two of us that know that now, doesn't it?" When she then yelled, "You get out of here, you get out of our apartment now," the man said, "I'm going, I'm going, I'm gone," jumped over the bed, ran down the stairs with Debbie Sue in pursuit and out of the apartment through the kitchen door. Debbie Sue went to a neighbor's apartment to call the police, who arrested the

defendant within an hour. Returning to her own home, Debbie Sue discovered that the defendant had gained entry by cutting a window screen and opening the front door. Upstairs she saw that the defendant had unplugged her bedroom lamp and had moved a hope chest from the foot of the bed and an end table from beneath the window to a space between the foot of the bed and the wall. The furniture formed an enclosure to the side of the bed on which Debbie Sue was sleeping and on which she first felt someone touch her and first saw the defendant.

On cross-examination Debbie Sue testified:

"Q. Other than the time that you felt the hand on your body, did this person touch you in any way?

A. No, sir.

Q. At no time after that did the person touch you?

A. No, sir.

\* \* \*

Q. Did he make any threats to your children?

A. No, sir.

Q. Did he make any threats to you?

A. No.

Q. Did he attempt to grab you at any time?

A. Other than the time on my bed?

Q. Yes.

A. No, sir.

Q. In the time you refer to as the time you felt the hand on your side?

A. Yes, sir."

She also testified she had seen the defendant around the neighborhood at least twice. On the first occasion he was riding a motorcycle. The second time was the afternoon before the occurrence in question when the defendant was standing outside her apartment while she sunbathed. The defendant talked to one of her children while she was sitting on a lawn chair only a few inches away. On this occasion he mentioned his name, and after his invasion of

Debbie Sue's home she gave that name to the police.

The residential burglary statute provides:

> "A person commits residential burglary who knowingly and without authority enters the dwelling of another with the intent to commit therein a felony or theft." (Ill. Rev. Stat. 1981, ch. 38, par. 19—3(a).)

The sole issue in this case is whether the State has failed to prove that Toolate had the intent to commit rape when he knowingly and without authority entered Debbie Sue's dwelling. Rape is sexual intercourse with a female not one's wife "by force and against her will." (Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a).) Strange as Toolate's behavior was, the record contains no evidence whatever that he used force against or that he intended to have sexual intercourse with Debbie Sue.

The best evidence that Toolate did not intend to engage in sexual activity by force is that there was no force and no threat of force, no sexual activity and no threats, promises, or suggestion of any kind. The defendant had no weapon. He did not harm or threaten to harm either Debbie Sue or the children. There was no sexual contact here. Presumably Debbie Sue was clad in no more than nightclothes, but the record is silent on this point. Whatever she was or was not wearing, Toolate did not ask her to undress, and did not attempt to undress her. He was fully clothed, including a jacket, and he did not remove any of his own clothing. He did not caress or fondle her, or begin any sexual activity. The only evidence that anyone touched Debbie Sue at all is her equivocal testimony that she was awakened when she felt a "pull" on her left side. She did not describe the pull as harsh or forceful. She testified that she at first believed that one of her daughters was trying to wake her to take the little girl to the bathroom; and nothing in the record negates this possibility.

Many of Toolate's actions are inconsistent with those of a would-be rapist. He wore no disguise and made no at-

tempt to hide his identity. He did not attempt to stop Debbie Sue when she got out of bed. When he was asked to leave, he went willingly and quickly and did not prevent Debbie Sue from calling the police.

Some of the defendant's actions remain unexplained, but even these do not lead to the inference that he entered the apartment with an intent to have sexual intercourse with Debbie Sue by force and against her will. The record does not indicate why the defendant moved the furniture to form an enclosure. If it was intended as a barricade, it was not a very good one, since Debbie Sue was able to avoid it by getting out of the other side of the bed, and the defendant himself avoided it when he left the apartment.

Whatever Toolate's intent was, rape involves the use of force, and there is no evidence of the use of force here or the intent to use force.

In other cases, our appellate court has clearly recognized that force is an essential element of an intent to commit rape. In *People v. Tackett* (1980), 91 Ill. App. 3d 410, the defendant entered the victim's residence in the evening and found her sleeping on a couch in the living room. He threw her husband's coat over her head, seized her by the arms and wrestled her to the floor. He did not stop when she requested him to, but put his hand over her mouth and attempted to unbutton her shirt. The appellate court affirmed the conviction. (91 Ill. App. 3d 410, 414.) Unlike this case, the attack in *Tackett* was obviously sexual in nature, and there was no question that force was used against the complaining witness. The judge could properly infer an intent to commit rape from the attempt to disrobe the woman, and the defendant's physical efforts to subdue her by placing a coat over her head, wrestling her to the ground, and preventing her from crying out.

Similarly, in *People v. Clerk* (1979), 68 Ill. App. 3d 1021, the defendant was convicted of burglary with intent to commit rape, but was acquitted of attempted rape. Al-

though the evidence was insufficient to establish that the defendant had taken a substantial step toward rape, it was sufficient to infer the requisite intent to have intercourse with a woman by force and against her will. (68 Ill. App. 3d 1021, 1029.) The defendant entered the complaining witness' front room where she was asleep on the couch with her three-month-old baby at 7 a.m. She awoke to find the defendant standing over her; his face partially masked. He held a knife to her throat and he had a screwdriver and a flashlight in his hand. Defendant told her to get up, to keep the baby quiet or he would kill her, and to lie on the floor. He unbuckled his belt and unzipped his pants. When he heard noises upstairs, he left. In *Clerk*, the defendant's intent to have sexual intercourse was made clear by his telling the complaining witness to lie down and by beginning to disrobe. Force was evidenced by the knife and the threats.

*Clerk* and *Tackett* stand in contrast to *People v. Matthews* (1976), 44 Ill. App. 3d 342. In *Matthews*, the defendant made a knowing, unauthorized entry with the intent to have sexual intercourse, but there was no evidence of any intent to use force. The complaining witness knew the defendant because he had previously repaired her clothes dryer. He entered her home in the afternoon through an open door, told her, "I want to [expletive deleted] you" and said, "Why don't you call the police?" She said she would; the defendant did not try to stop her when she left the house. When she returned with a neighbor, defendant was naked from the waist down. The appellate court reversed Matthews' conviction of burglary with intent to commit rape because the intent to use force was not proved beyond a reasonable doubt. (44 Ill. App. 3d 342, 344.) Like the defendant in *Matthews*, the defendant here did not attempt to force the complaining witness to do anything. Unlike *Matthews*, in this case it is not even clear that the defendant intended to have sexual intercourse.

The wording of the burglary statute, "with the intent to commit therein a felony or theft" (Ill. Rev. Stat. 1981, ch. 38, par. 19—3(a)), requires this result. In the absence of inconsistent circumstances, this court has held that proof of unlawful breaking and entering is sufficient to infer the intent to commit theft. (*People v. Johnson* (1963), 28 Ill. 2d 441, 443.) However, breaking and entering cannot be used to infer an intent to commit any other felony. If it could, the requirement of specific intent to commit that other felony would be meaningless. There would be no need to prove any specific intent at all, since all types of intent would be inferred from the unauthorized entry. Intent is often, of course, inferred from circumstantial evidence. But that does not mean that there is no separate element of intent, or that we can indulge in the hopelessly circular reasoning that the entry must be accompanied by an intent which stands proven by the entry itself.

The defendant in this case was not charged with burglary with the intent to commit theft, and cannot, therefore, be convicted of that offense. Because the State has failed to prove beyond a reasonable doubt that Toolate entered the dwelling with the intent to commit a rape, the only offense with which he was charged, the conviction and the appellate court's affirmance are reversed.

*Judgments reversed.*