THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIMOTHY D. SEHR, Defendant-Appellant.

Second District No. 2—85—0908

Opinion filed December 1, 1986.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor's Office, of Springfield, and William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of Elgin, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Timothy D. Sehr, was charged by information filed in the circuit court of Du Page County on February 11, 1985, with the

residential burglary of the dwelling place of Albert Jagiello located at 192 Plum Grove Road, Roselle. Following a bench trial, he was convicted and sentenced to a four-year term in the Department of Corrections. He appeals, contending the State's evidence was insufficient to prove him guilty beyond a reasonable doubt.

The complaining witness, Albert Jagiello, testified that on January 18, 1985, at about 1:15 a.m., he was asleep in the master bedroom of his seven-room ranch-style home when he was awakened by noises. Theorizing that the sounds were caused by his wife's return home from a party, he disregarded them and tried to return to sleep. He then heard someone walking toward his bedroom. Jagiello testified he saw a light in a bedroom across the hall go on and then off. Next, someone walked 8 to 10 feet into his bedroom and flicked on a cigarette lighter. Jagiello yelled, and the person ran from the room with Jagiello in pursuit.

Jagiello testified that he caught up with the person, whom he identified in court as the defendant, near the stairs leading to the basement. Jagiello did not know the defendant. Seizing him, he demanded, "What are you doing here?" to which the defendant replied, "Your daughter let me in and she is standing behind you." Although Jagiello has no daughter, he responded to the defendant's remark by turning around, at which time the defendant broke from his hold and departed down the basement steps. Jagiello then called the police. When the police arrived, Jagiello and the officers walked through the main floor of the single-story residence and the basement. Jagiello stated that nothing had been disturbed or taken from any part of the house, with the exception of a basement window, which had been broken and had a bent metal frame.

Roselle police officer Robert Thomas testified that about 1:15 a.m. on January 18, he reported to 192 Plum Grove Road to investigate a report of a break-in. Outside the house, he found a set of footprints in the snow leading toward a sliding door. The prints came from an open field west of the house. The prints continued from the sliding door to a basement window well. A second set of footprints went from the window well away from the house, in a northwesterly direction.

Thomas followed this second set of prints, which formed a continuous trail, for about 2½ miles until he reached a backyard at 407 Locust Street, Roselle, where he discovered the defendant standing behind a shed. The defendant was arrested and taken to the Roselle police station by Officers Thomas, Dempsey and Briscoe. The defendant was asked to provide only his name, address, and date of birth. Officer Thomas testified that while they were enroute to the police

station, the defendant asked why they were following him and why he was being arrested, stating that he had done nothing wrong.

When the defendant was booked, $621 in cash was found on his person. When asked why he was carrying that sum, the defendant explained that he had a court hearing set for that morning and had borrowed the money from his mother to use to pay the fine that had been ordered in a traffic case. An offer of proof was made that the defendant was scheduled to appear in court on January 18, 1985, and owed a $500 fine and court costs in connection with a traffic case.

Officer Thomas testified that the defendant gave his address as 406 White Oak, Roselle. Thomas said that the scene of the defendant's arrest at 407 Locust is about half a mile from the White Oak address. During trial, the defendant explained that his mother owns the house at 406 White Oak but rents the property out to another family. He testified that his mother did not live there in January 1985, and that the house on White Oak was not his destination when he left Jagiello's home.

Roselle police officer Robert Wiesman testified that he interviewed the defendant at about 2 a.m. after his arrest regarding the instant offense. After verbally giving the defendant his *Miranda* warnings, Officer Wiesman asked the defendant if he wanted to talk to him. The defendant said he did not know what the officer was referring to. Later, at about 4 a.m., the officer gave the defendant his *Miranda* rights again from a preprinted form which included a waiver of rights provision, which the defendant signed. The defendant related to Officer Wiesman that he did break into the house, but only because he wanted to find a place to sleep. He further told Wiesman that he thought he would check the house to see if anyone had heard him break the window. The defendant subsequently wrote out substantially the same statement and signed it, and it was admitted in evidence during trial.

The defendant testified that in November 1984, his car was broken down and he had no income, having been laid off from his regular employment as a carpenter. He further stated that he had broken up with his fiancee and left the home that they had shared. At the time of the instant offense in January 1985, he was living "all over," at no fixed address, spending the night with friends, at Union Station, in hotel or apartment-building lobbies and anywhere else that he could find shelter.

The defendant testified that prior to entering the Jagiello residence, he had been outside for 6½ hours looking for a place to sleep. His testimony that the night in question was very cold and snowy was

consistent with that of the police officers. The defendant stated he had traveled to the Roselle area with the hope of finding lodging for the night at a friend's home in Schaumburg. When he arrived at the friend's house, however, no one was home. He proceeded to Roselle to catch a train back to Chicago, but he found that he had missed the last one for the night. He later testified on cross-examination that he did not check to see if the station was open.

He testified he did not know if there was a laundromat or any other place in which to spend the night in Roselle, and that he was not familiar with the area around the Jagiello residence. As a result, at about 1 a.m., he was still walking around outside. He was dressed in a jumpsuit and hat.

The defendant testified his only intention in entering the Jagiello residence was to warm up and sleep. According to the defendant, he pulled on the basement window, and it came out but then accidentally fell in and broke. Fearing that the noise from the window may have awakened someone in the house, he went up the stairs to the main floor to check. Using a cigarette lighter for illumination, he walked through various rooms without touching anything and without turning on any house lights. When he came to the master bedroom, he flicked on his lighter, looked in and then began walking back toward the basement. As he approached the stairs, he stated he was grabbed from behind by Jagiello.

The defendant's account of his brief encounter with Jagiello in the house was essentially the same as Jagiello's. When he broke away from Jagiello, he ran down the stairs, climbed out the broken window and fled from the scene, heading back toward town. When the police officer found him he was standing behind a shed, and when the officer said "Freeze," he put his hands up in the air.

On the basis of the foregoing evidence, the court found the defendant guilty of residential burglary, and his oral motion for a new trial was denied.

The defendant argues the proofs presented to the trial court give rise to the reasonable inference that he entered the Jagiellos' house simply for the purpose of taking shelter from a cold January night, not with intent to commit a theft. As such, he contends the trial court's finding of guilt is contrary to the manifest weight of the evidence and his conviction should be reversed.

The State argues the defendant's asserted sole reason for breaking into the house is inconsistent with the facts in the record, and all logical inferences point to the defendant's guilt of the offense as charged.

 The offense of residential burglary has been stated to consist of "entering, with or without force, any dwelling, during the day or night, with intent to commit a felony or a theft." (*People v. Toolate* (1983), 115 Ill. App. 3d 13, 16, *rev'd on other grounds* (1984), 101 Ill. 2d 301.) "The gravaman of the offense is the felonious intent with which the building is entered. [Citations.]" (*People v. Maffioli* (1950), 406 Ill. 315, 320; *In re L.F.* (1983), 119 Ill. App. 3d 406; *People v. Toolate* (1983), 115 Ill. App. 3d 13, 16, *rev'd on other grounds* (1984), 101 Ill. 2d 301.) Whether the requisite intent existed is a question for the trier of fact, and the decision of the fact finder will not be overturned on appeal unless the evidence is palpably contrary to the verdict or so unreasonable, improper, or unsatisfactory as to create a reasonable doubt of guilt. *People v. Morrison* (1983), 114 Ill. App. 3d 828, 830.

The parties agree on the law applicable to the issue of proof of the defendant's intent to commit theft. In *People v. Johnson* (1963), 28 Ill. 2d 441, 443, it was stated:

"Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose."

See also *People v. Toolate* (1984), 101 Ill. 2d 301, 308; *People v. Fico* (1985), 131 Ill. App. 3d 770, 772-73; *People v. Brown* (1979), 69 Ill. App. 3d 236.

Because there were no contradictory circumstances to rebut the inference of intent to commit larceny in the case before it, the *Johnson* court held the jury was warranted in finding the defendant's guilt there was established beyond a reasonable doubt.

Defendant likens the circumstances of the instant cause to those of the defendant in *People v. Perry* (1971), 133 Ill. App. 2d 230, whose burglary conviction was reversed. In that case, the defendant had gotten into the apartment of a sleeping woman he had known for about five years and whom he had visited at night on previous occasions. He did not take anything, and he was discovered at the woman's bedroom door rather than in the living-room or dining-room areas where, the court opined, objects of theft were most likely to be found. The court considered that the defendant knew the woman and

could have had a motive for his presence in her home other than intent to steal.

Defendant here points out that nothing was taken or even disturbed, save for the broken window, and notes that he was not discovered rummaging through desk drawers or searching closets as in *People v. Hancock* (1978), 65 Ill. App. 3d 694, or walking around with a nylon stocking over his face as in *People v. Collins* (1977), 53 Ill. App. 3d 114. Finally, he asserts his explanation that he was seeking shelter gives rise to the possibility that he had a motive other than larceny, and it serves as plausible rebuttal to any inference of intent to commit theft which arose from the circumstance of his entry into a home which contained personal property. Citing *People v. McCombs* (1968), 94 Ill. App. 2d 308, he contends that where review of the evidence and consideration of the record on appeal leaves a reviewing court "with a grave and serious doubt of the guilt of the accused," it is that court's duty to reverse the conviction.

■ Our review of the evidence leaves us with no such doubts about the defendant's guilt, and we find no reversal is warranted. As the State points out, the defendant's conduct here was inconsistent with his claim that he was only looking for a place to sleep. It defies logic to believe that the defendant, who stated he was "afraid" someone had heard the window glass break, would proceed to go upstairs where, if indeed someone had heard the noise, a confrontation would almost certainly occur. In light of Jagiello's testimony that he heard a noise but discounted its origin as intrusive and tried to go back to sleep, it seems more likely that the defendant went upstairs to reconnoiter because he felt it was safe to do so when no one responded to the noise. It further seems illogical to believe that the defendant would wander around for 6½ hours in snowy, below-zero weather before breaking into a stranger's home, thereby risking arrest or, worse, injury at the hands of a defensive homeowner, when he might as easily have checked to see if the train station was indeed open at the time he was there, or, at the least, have broken into the home of the absent friend from whom he was allegedly seeking shelter in the first place. The fact that the Jagiello residence was strange to the defendant is a significant distinguishing feature between the instant cause and *People v. Perry* (1971), 133 Ill. App. 2d 230, on which the defendant relies, where the defendant's familiarity with the woman provided an alternative reason for his presence in her home other than intent to steal. We find the fact that nothing was taken or even disturbed in the Jagiello residence has little redemptive value. The defendant was apparently only in the house for a short time before he

was discovered. The basement contained rather large items such as sleeping bags, lawn furniture and so forth, and the first bedroom the defendant entered was a combination junkroom/weight-training room. It would appear that neither room contained the type of small valuable items which could be most easily carried away by a person afoot. On the other hand, a master bedroom seems a likely cache for such portable and desirable items as jewelry and currency.

The State additionally notes the money the defendant possessed would have been more than an adequate amount to afford him a place to sleep even after deducting the $500 fine and court costs the defendant was required to pay in connection with a traffic offense. Most telling perhaps is the defendant's conduct upon being discovered by Jagiello at which time he lied in order to distract and to escape from his captor, and also the fact that defendant first feigned ignorance with the police as to any wrongdoing or knowledge of the incident, and he then later provided the explanation that he was only looking for a warm place to sleep. Evidence of such inconsistency has been viewed as an impeachment of credibility (*People v. Brooks* (1984), 129 Ill. App. 3d 64) and as an expression of consciousness of guilt (*People v. White* (1985), 134 Ill. App. 3d 262, 275, *cert. denied* (1986), 475 U.S. 1126, 90 L. Ed. 2d 194, 106 S. Ct. 1650). We cannot envision a truly homeless person, driven to breaking into a stranger's home by virtue of prolonged exposure to the elements, who would fail to offer his plight instantly in defense of his actions.

In sum, we find the evidence was sufficient to sustain the defendant's conviction of residential burglary.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

NASH, P.J., and HOPF, J., concur.