THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EMMANUEL J. BOOSE, Defendant-Appellant.

Second District    No. 2—00—0579

Opinion filed January 11, 2002.

G. Joseph Weller and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

JUSTICE CALLUM delivered the opinion of the court:

The State charged defendant, Emmanuel J. Boose, with residential burglary (720 ILCS 5/19—3(a) (West 2000)). The information alleged

that he knowingly and without authority entered Marilyn Nelson's dwelling with the intent to commit criminal sexual assault (720 ILCS 5/12—13(a) (West 2000)). Following a bench trial, the court found him guilty and sentenced him to five years' imprisonment. Defendant appeals, arguing that (1) the State did not prove him guilty beyond a reasonable doubt; and (2) the court erred in failing to conduct the proper balancing test before allowing the State to use his convictions to impeach him. We agree that the State did not establish defendant's guilt beyond a reasonable doubt, and we therefore reverse his conviction and sentence.

Defendant challenges the sufficiency of the evidence on two bases. First, he alleges that the victim's identification of him was not reliable. Second, he argues that the State did not prove beyond a reasonable doubt that the perpetrator entered the residence with the intent to commit criminal sexual assault. We agree with defendant's second contention and thus summarize only the evidence relevant to that issue.

## BACKGROUND

On September 6, 1999, Marilyn Nelson went to sleep on the second floor of her residence. Nelson's three daughters slept with her in her bed, and her two sons slept in the room across the hall. Nelson slept in shorts and a T-shirt. At 3:58 a.m., Nelson awoke when she felt someone touch her thigh. She noticed a man in her bedroom. Nelson described the touch as lasting for "a quick second" on the inner part of her mid-thigh, underneath her shorts. Nelson immediately jumped up and screamed, and the man fled down the stairs.

Nelson called the police and described the intruder and his clothing. The police found defendant near Nelson's residence. Shortly thereafter, the police conducted a showup, and Nelson identified defendant as the intruder.

The State charged defendant with residential burglary, a Class 1 felony, alleging that he "knowingly and without authority, entered the dwelling place of Marilyn Nelson *** with the intent to commit criminal sexual assault." The parties presented a negotiated plea agreement in which defendant would plead guilty to misdemeanor battery and be sentenced to time served. The State explained to the trial court that it was offering the agreement because its case was weak. The assistant State's Attorney told the court that the initial charge was misdemeanor criminal trespass, but it was later upped to a felony. The following colloquy occurred:

"MS. FITZGERALD [Assistant State's Attorney]: [Nelson] remembers what happened, but she's going to have an ID problem.

In and of that itself, Judge, you go to the underlying offense of proving that you broke into a house for purposes of sexual assault? How am I going to prove why he went there just for [*sic*] the rubbing of a leg? I have no fondling—

THE COURT: I don't know about that.

MS. FITZGERALD: That's the underlying offense. That he broke in with the purpose not to commit a theft, but the purpose to commit therein a criminal sexual assault.

MR. SIMMONS [Assistant Public Defender]: Involving penetration.

MS. FITZGERALD: And I have him touching a leg."

The court stated that it would accept the plea agreement if Nelson approved, but no other discussion of the plea agreement appears in the record, and the case was transferred to another judge for trial. When the court found defendant guilty, it did not mention the intent issue. However, when it earlier denied defendant's motion for a directed finding, the court stated that it was "obvious" that the perpetrator's intent was to commit a sexual assault.

## ANALYSIS

■ ■ In reviewing the sufficiency of the evidence to support a criminal conviction, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A residential burglary conviction requires proof that the defendant knowingly and without authority entered the dwelling place of another with the intent to commit therein a felony or theft. 720 ILCS 5/19—3(a) (West 2000). Here, the State alleged, and thus was required to prove, that defendant entered Nelson's residence with the intent to commit criminal sexual assault. For the purposes of this analysis, we will assume that Nelson's identification of defendant was reliable and that he did break into her house.

The leading case on this issue is *People v. Toolate*, 101 Ill. 2d 301 (1984). In that case, the defendant broke into a woman's home at 3 a.m. She and her two daughters were asleep in an upstairs bedroom. She awoke when she felt someone pull on her left side. Upon getting out of bed, she noticed that the lamp next to the bed had been unplugged. She turned on the bathroom and bedroom lights and noticed the defendant standing in her bedroom. She said, "I knew somebody else was in there with us." 101 Ill. 2d at 303. The defendant replied, "That makes two of us that know that now, doesn't it?" 101 Ill. 2d at 303. The woman told the man to get out of her apartment, and the man replied, "I'm going, I'm going, I'm gone," and fled. 101

Ill. 2d at 303. The evidence showed that, in addition to unplugging the bedside lamp, the defendant had moved furniture to form an enclosure around the bed. 101 Ill. 2d at 304.

The defendant was convicted of residential burglary, predicated on the intent to commit rape. The Criminal Code of 1961 defined rape as sexual intercourse with a female not one's wife by force and against her will. Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a). The supreme court reversed the defendant's conviction, holding that the State had not proved beyond a reasonable doubt that the defendant intended to use force against or have sexual intercourse with the victim. The court noted that the defendant did not use any force against the victim or engage in any sexual contact. The court also noted that the defendant's behavior was inconsistent with that of a would-be rapist in that he did not attempt to hide his identity, did not attempt to restrain the victim, and left willingly when she told him to leave. *Toolate*, 101 Ill. 2d at 305-06.

The *Toolate* court reviewed cases in which courts had upheld convictions of residential burglary predicated on the intent to commit rape. In *People v. Tackett*, 91 Ill. App. 3d 410, 411-12 (1980), the defendant wrestled the sleeping victim to the floor, did not stop when she asked him to, and attempted to unbutton her shirt while holding one hand over her mouth. In *People v. Clerk*, 68 Ill. App. 3d 1021, 1025 (1979), the defendant was partially masked and held a knife to the victim's throat. He ordered her to be quiet and to lie on the floor. He unbuckled his belt and unzipped his pants, but fled when he heard noises upstairs.

*Toolate* contrasted those cases with *People v. Matthews*, 44 Ill. App. 3d 342 (1976). In that case, the complaining witness knew the defendant because he had been in her home previously to repair her clothes dryer. On the date in question, he entered her home through an open door and said, "I want to fuck you." *Matthews*, 44 Ill. App. 3d at 343. He then suggested that she call the police. The woman went to a neighbor's house to call the police, and the defendant did not try to stop her. She returned with a neighbor and found the defendant naked from the waist down. The appellate court reversed the defendant's conviction of residential burglary with the intent to commit rape, noting that, although the defendant expressed a desire to have sex with the victim, there was no evidence that he intended to do so by force. He did not attempt to touch her, and he even suggested that she call the police. He did not try to stop her when she went to do so. *Matthews*, 44 Ill. App. 3d at 343-44.

The *Toolate* court determined that the case before it was more like *Matthews* than *Tackett* or *Clerk* because there was no evidence that

the defendant intended to use force. The supreme court held that the State's case was even weaker than in *Matthews* because there was no evidence that the defendant intended to have sex with the victim. *Toolate*, 101 Ill. 2d at 307. The court stated that the defendant's strange and unexplained behavior—such as forming a furniture barricade around the bed—was not proof beyond a reasonable doubt that he entered the residence intending to commit rape. *Toolate*, 101 Ill. 2d at 305-06.

Since *Toolate* was issued, the appellate court has twice upheld convictions of residential burglary predicated on the intent to commit criminal sexual assault. In *People v. Maggette*, 311 Ill. App. 3d 388, 391 (2000), the victim awoke to find the defendant sucking her breast and caressing her vagina. He was also using her hand to rub his penis. In upholding his conviction, the court noted that the victim had previously rejected advances by the defendant, he was not permitted to enter the home, and he knew that she was alone and intoxicated. *Maggette*, 311 Ill. App. 3d at 398-99.

In *People v. Cunningham*, 265 Ill. App. 3d 3, 6 (1994), the defendant, who worked for the victim's husband, made scores of obscene calls to the victim when her husband was not home. In most of the calls, the defendant merely expressed a desire to engage in sexual acts with the victim. In one, however, he threatened, " 'I'm going to f--- you're a--.' " *Cunningham*, 265 Ill. App. 3d at 6. The defendant broke into the victim's house at 5 a.m., shortly after her husband left for work. This court upheld the defendant's conviction. We noted that the evidence showed that the defendant had repeatedly expressed a desire to have sex with the victim and that he knew that the victim would be unreceptive. Further, the evidence showed that the defendant had been watching the house and broke in right after the victim's husband had left. We held that a rational jury could infer beyond a reasonable doubt that the defendant entered with the intent to commit criminal sexual assault. *Cunningham*, 265 Ill. App. 3d at 7.

■ Here, we must conclude that a rational trier of fact could not find *beyond a reasonable doubt* that defendant entered Nelson's residence with the intent to commit criminal sexual assault. Defendant broke into Nelson's house between 3 and 4 a.m. and thus clearly did commit a crime. Further, a rational trier of fact could conclude that defendant entered the residence with a criminal intent. In *Toolate*, however, the supreme court held that the mere act of breaking and entering could not be used to infer an intent to commit a felony. Otherwise, the statute's requirement of specific intent to commit a felony would be meaningless. The court stated that it would not "indulge in the hopelessly circular reasoning that the entry must be

accompanied by an intent which stands proven by the entry itself." *Toolate*, 101 Ill. 2d at 308.

The question thus becomes whether defendant's briefly rubbing the inside of Nelson's thigh while she slept proved beyond a reasonable doubt that he entered with the intent to commit criminal sexual assault. We hold that it did not. The facts here are not similar to those in which courts have upheld residential burglary convictions based on the intent to commit rape or criminal sexual assault. Defendant never expressed a desire to have sex with Nelson, used no force against her, did not threaten her in any way, and did not touch her genitals. Further, as in *Toolate*, defendant's actions were somewhat inconsistent with those of a would-be rapist. Defendant made no attempt to hide his identity and fled the house the moment the victim woke up. These do not seem like the actions of someone who entered the residence with the specific intent to commit a criminal sexual assault.

The touch defendant used here—rubbing the inside of Nelson's thigh—was perhaps more sexual than the pull on the victim's left side in *Toolate*. On the other hand, defendant here did not build a furniture barricade around the bed or unplug the bedside light as did the defendant in *Toolate*. Regardless, defendant's actions were simply not sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant entered with the intent to commit an act of sexual penetration by the use or threat of force (see 720 ILCS 5/12—13(a)(1) (West 2000)).

The State argues that criminal sexual assault (720 ILCS 5/12—13(a) (West 2000)) is not the same as rape and thus *Toolate* does not control. According to the State, the rape statute required proof of sexual intercourse by force and against the complainant's will (see Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)), while criminal sexual assault can be committed in four different ways, three of which do not require the use of force (see 720 ILCS 5/12—13(a) (West 2000)). The State concedes that two of these (720 ILCS 5/12—13(a)(3), (a)(4) (West 2000)) are inapplicable. The State posits, however, that defendant could have been found guilty of entering with the intent to commit criminal sexual assault under subsection 12—13(a)(2) (720 ILCS 5/12—13(a)(2) (West 2000)), which is defined as the accused committing "an act of sexual penetration [when] the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." According to the State, the trial court could have properly found that defendant intended to have sexual intercourse with Nelson while she was asleep.

There are numerous problems with the State's argument. First, its statutory argument is simply incorrect. Although the rape statute

required a showing that the act of sexual intercourse was by force and against the victim's will, the statute specifically explained that sex was "by force and against [the victim's] will" if the victim was unconscious. See Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)(1). Thus, contrary to the State's assertion, sex with a sleeping person would have been rape without any additional showing of force or threatened force.

The second problem with the State's argument is that the State never argued this theory in the trial court. If anything, the State's argument suggests that the charging instrument may have been defective in that defendant was never given proper notice of the precise charge against him. Neither in the charging instrument nor at trial did the State ever specify what type of criminal sexual assault defendant intended to commit. Essentially, the State is suggesting that it can charge defendant with entering with the intent to commit criminal sexual assault and not state until the cause is on appeal what type of criminal sexual assault it is alleging. Defendant, however, has not challenged the charging instrument.

The most fundamental problem with the State's argument is that the evidence is simply insufficient to support this theory. Just as it was insufficient to show an intent to commit an act of sexual penetration by the use or threat of force, proof that defendant rubbed Nelson's thigh is simply not sufficient to show beyond a reasonable doubt that he entered her residence with the intent to commit an act of sexual penetration on a sleeping person.

We emphasize that we are not saying that defendant committed no crime when he entered Nelson's residence. Instead of charging defendant with crimes that it probably could have proved (*e.g.*, battery, criminal trespass to a residence), however, the State elected to charge defendant with a crime of which there simply was not sufficient evidence. The State acknowledged at a pretrial conference that it did not believe it had sufficient evidence to convict defendant of residential burglary, yet it decided to proceed with that charge.

Accordingly, we have no choice but to reverse defendant's conviction of residential burglary, the only crime with which he was charged.

Reversed.

McLAREN and BYRNE, JJ., concur.