THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN J. WILSON, Defendant-Appellant.

Second District   No. 2—87—0039

Opinion filed November 18, 1988.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant was charged by information with the offenses of residential burglary, theft of property exceeding $300 in value, and theft (firearms). (Ill. Rev. Stat. 1985, ch. 38, pars. 16—1(a), (e)(2), (e)(3), 19—3.) The complainant in these charges was John C. Wilson, the defendant's father.

After going to trial, defendant was convicted of residential burglary, theft over $300, and theft, and sentenced to concurrent terms of four years, two years, and one year, respectively. On appeal, defendant argues that (1) he was denied his absolute right to be present at trial; (2) he was denied a fair trial when the trial court failed *sua sponte* to instruct the jury on an essential element of a charge; (3) the prosecutor failed to prove defendant guilty of residential burglary; and (4) his convictions for both theft over $300 and theft (firearms) cannot stand.

At the preliminary hearing held on May 29, 1986, defendant was advised of the charges and penalties and further advised that should he fail to appear for his trial, the trial would be held *in absentia*.

On December 30, the date his trial was to commence, defendant was not present. Defense counsel stated that a conversation with defendant's mother revealed that defendant had been staying at a friend's house but that she did not know defendant's present whereabouts. The court noted that the court reporter had related to him that she thought she had seen the defendant at the courthouse a day earlier. The prosecutor argued that the defendant had been present on October 31 when the cause was set for trial. When queried by the prosecutor if the court required further evidence, the court found that in light of defendant's experience with the judicial system and his presence at the previous hearings, the defendant knew the consequences of his absence. In granting the prosecution's motion for trial *in absentia*, the court stated that it knew "of no reasonable explanation for his absence." Thereafter, *voir dire* was conducted, and the jury trial proceeded without defendant's presence.

John C. Wilson (Wilson), the defendant's father, testified that on the day of the incident, May 25, 1986, he lived at 2248 River Road in

Freeport, Illinois. Wilson stated that on the day in question, he had been vacationing in Wisconsin. Wilson related that his marriage to Joyce Wilson had been terminated by dissolution and that he had been given custody of his two sons, Jarrod and the defendant. Wilson testified that while the order of dissolution established joint custody of his sons, the order provided that the "[p]rincipal residence was supposed to be with me."

Wilson testified further that approximately six months after the dissolution in July 1985, defendant decided that he was not going to live in the house with his father and under his father's rules. Wilson stated that defendant would have been able to return to the house "only if he agreed to live under [my] rules." Thereafter, according to the witness, defendant went to live with his grandmother and never attempted to return.

Wilson noted that defendant had left some of his property behind, in particular, clothing and a stereo. Wilson declared that the defendant did not have authority to enter the house and that he had informed defendant several times since he left of his feelings on the matter.

Returning from his vacation, Wilson found that his house had been ransacked. A basement window had been kicked in, and an inspection of the house revealed that many things had been taken, to wit, a video disc player, a safe, $350 in cash, jewelry, and 12 guns, which included rifles, shotguns, and pistols. Wilson opined that the items taken were well in excess of $300. Wilson testified further that he had given his son no permission to exercise control over his property.

Wilson related that on previous occasions defendant would ask permission to enter the house to pick up his personal property, and on those occasions, Wilson would permit his son to do so. Wilson claimed that if his son would have wanted to enter the house without his explicit permission, defendant would not have had the authority.

On cross-examination, Wilson testified that the dissolution order terminating his marriage occurred in February 1985. Wilson confirmed that according to the dissolution order, he was to furnish the basic needs of defendant, including the requirement to provide housing for him. Defendant was born on December 4, 1968, and was 16 years old at the time of the dissolution. Wilson testified further the dissolution order mandated that he was to provide "the primary place of residence" for his children. Wilson related that he had understood the order to mean that he had the responsibility to support defendant and his brother. He did not seek to modify this order.

Wilson testified further that after defendant moved out in July 1985, he had helped his son secure a job in a car wash. Wilson admitted that he did not furnish defendant any support during this period. Wilson talked to his son every few weeks; he stated that he never gave his son formal notice not to come to the house. Wilson also testified that his son had sent him a letter after the incident indicating that he had acted against his father out of bitterness.

Deputy Michael Ridgway of the Stephenson County sheriff's department testified that he investigated the incident at bar. Pursuant to this investigation, Ridgway invited defendant to come to the sheriff's office to talk about the incident at his father's place. Once at the station house, defendant was given *Miranda* warnings and later gave an incriminating statement; defendant was given warnings a second time and gave another incriminating statement. The police, relying on defendant's statements, recovered weapons near the scene of the incident. As to defendant's motivation, Ridgway testified that defendant had "indicated both that his father did not want him living there and that he did not want to live there."

At the conclusion of the State's case, defense attorney's motion for directed verdict was denied. The jury found defendant guilty of all three charges.

At the sentencing hearing, defendant, who was present at this proceeding, was sentenced to a term of incarceration of four years on the residential burglary conviction, two years on the theft over $300 conviction, and one year on the theft (firearms) conviction, the sentences to run concurrently. This appeal followed.

We initially address defendant's argument that he was denied a fair trial when the trial court failed *sua sponte* to instruct the jury on an essential element of the residential burglary charge. At the close of all the evidence, the prosecution tendered the following instruction:

"A person commits the offense of residential burglary when he, without authority, knowingly enters a dwelling with the intent to commit therein the offense of theft."

Defense counsel made no objection, and the jury was given said instruction.

■ Defendant initially acknowledges the general rules regarding instructions: (1) a defendant cannot claim prejudicial error in the giving of an instruction if he did not object at trial (*People v. Jones* (1975), 60 Ill. 2d 300), and (2) the trial court is under no obligation to give, *sua sponte*, jury instructions not requested by counsel. (*People v. Grant* (1978), 71 Ill. 2d 551.) However, defendant points out that

our supreme court has found that these basic rules have been modified by the requirements of a fair trial. The court has held that the trial court *"bears the burden of seeing that the jury is instructed on the elements of the crime charged,* on the presumption of innocence and on the question of burden of proof." (Emphasis added.) *People v. Parks* (1976), 65 Ill. 2d 132, 137; see also *People v. Fierer* (1988), 124 Ill. 2d 176.

Defendant asserts that here the jury was not fully instructed that the residential burglary involved the "dwelling place of another." (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a).) Instead, the instruction dealt merely with "a dwelling." Defendant contends that the tendered instruction did not contain the necessary statutory language, and, therefore, it did not comport with the legislature's intent.

Moreover, defendant argues that this error was particularly egregious because an essential thrust of his defense was that the situs of the incident was his own, court-sanctioned dwelling place. Defendant contends that with the deletion of the phrase, "dwelling of another," the jury was not compelled to consider his primary defense to the charge of residential burglary.

The State argues that the trial court's failure to *sua sponte* instruct the jury that a residential burglary must occur in the dwelling place of another did not constitute reversible error. The State maintains that this argument misconstrues the defense at trial and pretrial to the charge of residential burglary. The State asserts that contrary to his appellate argument, it was not defendant's position below that he could not be tried or convicted of residential burglary because the dwelling entered by defendant was not that "of another" but was, in fact, defendant's own dwelling. Rather, the State contends that the defense below only addressed defendant's entering the dwelling "without authority," a different element of the offense of residential burglary. (Ill. Rev. Stat. 1985, ch. 38, par. 19—3.) Thus, the State concludes that defendant's argument on this issue should be rejected.

Further, the State acknowledges that it is an element of residential burglary that the dwelling be that "of another" and that the instructions given below did not reflect such an element. Nevertheless, it asserts that the failure to instruct the jury on the element of the "dwelling of another," considering the defendant's emphasis upon the element of "without authority," amounts to harmless error. Accordingly, the State contends that defendant is not entitled to a new trial.

In reply, defendant asserts that, in the proceedings below, his de-

fense was two-pronged, namely, that he had the *authority* to enter his court-ordered residence and that said residence was not the residence *of another*. Defendant maintains that the State makes no challenge to his citations to the record which relate to his defense that the residence in question was not a "dwelling place of another." As a result, defendant contends that this element of his defense theory warranted a full and correct instruction as to all elements of residential burglary.

■ We find that the trial court bore the burden of seeing that the jury was instructed on all elements of the charge of residential burglary. (*People v. Parks* (1976), 65 Ill. 2d 132.) The element of "the dwelling place of another" was particularly critical here, where defendant claimed that the residence at 2248 River Road, Freeport, Illinois, was his own legally sanctioned domicile. The record indicates that throughout the pretrial proceedings defendant repeatedly asserted this contention. Therefore, the court had to be fully aware that the element of the dwelling *of another* was critical to the defense. The fact that defendant was tried *in absentia* (though he was represented by counsel) and, consequently, did not put forward any defense at trial does not lessen the necessity of the trial court instructing the jury as to all elements of the charge of residential burglary.

Accordingly, we find that the trial court committed reversible error in not instructing the jury on an essential element of the charge, *i.e.*, that the offense must occur in the dwelling place of another. Because of our determination of this issue, we do not need to address the other arguments brought up by defendant. We reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

NASH and REINHARD, JJ., concur.