THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES KICK, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LINDA KICK, Defendant-Appellant.

Second District   Nos. 2—90—0451; 2—90—0452 cons.

Opinion filed July 15, 1991.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, for appellants.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Following a bench trial conducted in the circuit court of Lake County, defendants, Charles Kick and Linda Kick, were convicted of the offense of home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11), and each was sentenced to six years' imprisonment.

The sole issue raised by defendants on appeal is whether this court, pursuant to its authority under Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), should modify defendants' convictions to the offense of criminal trespass to residence (Ill. Rev. Stat. 1989, ch. 38, par. 19—4) in order to avoid the imposition of the statutorily mandated minimum six-year sentence of imprisonment for home invasion.

The instant prosecution arises in the context of a custody dispute between defendant Linda Kick and her ex-husband, Michael Kinsland. Following the dissolution of their marriage, Michael was granted custody of the couple's daughter, Tanya, who currently resides with Michael, his new wife Amy Kinsland, and the Kinslands' two children.

Linda subsequently married Charles Kick, a former co-worker of Michael's.

On October 21, 1989, defendants were arrested following an altercation at the Kinslands' apartment and were subsequently indicted for the offense of home invasion. The matter proceeded to a bench trial for both defendants on March 21, 1990. The State's evidence consisted of the testimony of the Kinslands and the police officers who arrived at the scene of the altercation. Defendants testified on their own behalf.

The Kinslands' version of the events surrounding the October 1989 incident is as follows. At approximately 11 p.m. on October 20, 1989, Amy Kinsland heard a knock at the front door of the family's apartment. She was unable to see through the door's peephole, so she summoned her husband. Michael opened the door and saw his ex-wife, Linda Kick, whom he had not seen in several years. Linda indicated she wanted to speak with Michael, but he told her that she should call a lawyer if she had anything to say to him. Michael then attempted to shut the door, but Linda placed her foot in the doorway. Michael was forced to push Linda into the hallway in order to shut the door. Linda shouted, "[W]hy are you doing this to me?" Michael directed Amy to telephone the police when Linda refused to leave. After Amy telephoned the police, Linda left. The Kinslands believe that they saw Charles Kick walking with Linda as she left.

The police arrived at the Kinslands' apartment shortly after Linda left, and the Kinslands made a report of the incident. Thereafter that evening, the Kinslands received 8 to 12 "harassing" phone calls from Linda. All but one of the calls were received by the Kinslands' answering machine.

A few hours later, at approximately 2 a.m. on October 21, 1989, the Kinslands were watching television in the living room of their apartment when they heard the door in the hallway of their apartment building open. Thinking that the Kicks might have returned, Michael directed Amy to telephone the police again. When Amy got up to do so, there was a knock on the front door, which was locked. Linda said from behind the door that she wanted to speak with Michael, but he told her to leave. At that point, the front door burst open after apparently being kicked by Charles. Michael met Charles in the middle of the living room and told the Kicks to leave, to which Charles responded, "Fuck you, Mike." Charles then came "running" at Michael and punched him on the side of his head. The two men then grabbed each other and fell to the ground; Charles bit Michael on the wrist in the ensuing struggle.

In the meantime, Linda had entered the apartment and headed down the hallway toward the bedroom of the Kinslands' children, but

Amy met her in front of the bedroom door. Linda pulled Amy away from the door and hit her on the side of the head with a closed fist. Amy attempted to grab Linda by her legs, but Linda broke loose and grabbed Amy by her hair and hit her again. Amy then picked up a vacuum cleaner and hit Linda with it, and the two women then fell to the ground. Linda then banged Amy's head against the wall.

At this point, the police arrived at the Kinslands' apartment and arrested the Kicks. As a result of the scuffle, Michael suffered a bump on the head, and the skin on his wrist was broken as a result of the bite received from Charles. Amy suffered scrapes and bruises, and she also had bumps on her head in the area were Linda had torn out Amy's hair.

Officer Dennis J. O'Connell of the Grayslake police department testified that he was dispatched to the Kinsland apartment shortly after 11 p.m. in response to Linda's first visit to the apartment. At this time, the door to the apartment was not damaged. Officer O'Connell returned to the apartment at approximately 2 a.m. in response to the second incident. As he entered the apartment on this occasion, Officer O'Connell noticed that the front door frame was broken and the striker plate was dislodged. Officer O'Connell grabbed Charles Kick as he was wrestling with Michael Kinsland, and he and his partner, Officer Steven Meek, handcuffed Charles. Officer Meek then handcuffed Linda, who offered some resistance. Officer Meek also testified at trial and substantially corroborated Officer O'Connell's testimony.

Defendants testified on their own behalf and recounted the events in question as follows. Linda and Charles both went to the Kinslands' apartment complex at approximately 11 p.m. on October 20, 1989, and Linda went to the apartment door to speak with Michael while Charles waited in the parking lot. They went to the apartment at this late hour hoping that Tanya would be asleep. Michael answered the door but immediately slammed it in Linda's face; Linda did not put her foot inside the door. The Kicks then left, and Linda attempted three times to telephone Michael.

The Kicks returned to the Kinslands' apartment shortly before 2 a.m. hoping that Michael might have "had time to think it over." Michael opened the door and, after he and Charles exchanged words, Michael grabbed Charles and pulled him into the apartment. Charles bit Michael's wrist in self-defense in the ensuing struggle. When Linda approached the two men to break up the fight, Amy approached her from behind and grabbed her by the hair. Linda responded by grabbing Amy's hair, and the two women fell to the ground without exchanging any punches. Because she is subject to anxiety attacks, Linda resisted slightly when the police arrived and attempted to handcuff her.

In announcing its findings, the trial court stated, "I find the testimony of the Kinslands totally believable and I find the testimony of each of the defendants totally incredible." The court found specifically that the Kicks, who had reason to believe the Kinslands were home, entered the Kinslands' dwelling and intentionally caused injuries to the Kinslands. The matter was then recessed until sentencing.

Defendants each filed a motion for reconsideration or alternatively for a new trial on the basis that they were not proved guilty of home invasion beyond a reasonable doubt, specifically with regard to the proof of the injuries sustained by the Kinslands.

A sentencing hearing was held on April 27, 1990. Before addressing sentencing, the trial court, noting that the Kinslands had suffered "punching and bruising," denied defendants' post-trial motions. Linda's attorney made it clear to the court that he was not prepared to proceed to sentencing unless the court was inclined to impose the minimum six-year sentence prescribed by statute. The court stated:

> "THE COURT: I think—I don't know if I have said it, but I think it is indicated that this is a minimal type offense."

Linda's attorney then indicated that he was willing to proceed. No additional evidence was received. When given the opportunity to address the court, Linda stated, "[W]e have been falsely accused, your honor." The court then sentenced defendants to six years' imprisonment. Defendants separately appealed from their convictions, and we consolidated the appeals.

On appeal, defendants do not contest the sufficiency of the evidence supporting their convictions of home invasion. Instead, defendants contend only that their "convictions for home invasion should be reduced to criminal trespass to residence in order to mitigate the unduly harsh mandatory minimum sentence *** imposed on them."

■■■ The offense of home invasion is a Class X felony (Ill. Rev. Stat. 1989, ch. 38, par. 12—11(c)), which is punishable by a minimum of 6 and a maximum of 30 years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3)). It is well established that, under the State's police power, the legislature has wide discretion to prescribe penalties for defined offenses. (*People v. Morris* (1990), 136 Ill. 2d 157, 161, 554 N.E.2d 235.) Upon a determination of guilt, a trial court is obliged to impose the penalties mandated by the legislature unless the penalty would shock the conscience of reasonable people. (*People v. Wade* (1987), 116 Ill. 2d 1, 6, 506 N.E.2d 954.) Even in such circumstances, the interference with the legislature's judgment is justified only because the penalty is clearly in excess of the very broad and general constitutional limi-

tations applicable. See *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542, 416 N.E.2d 259.

Defendants concede the mandatory nature of the minimum statutory sentence, and they do not challenge the constitutionality of the sentencing statute. Instead, defendants contend that Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)) empowers this court to modify their convictions to the offense of criminal trespass to residence, a Class A misdemeanor (Ill. Rev. Stat. 1989, ch. 38, par. 19—4).

■ Supreme Court Rule 615 provides, in pertinent part, as follows:

"On appeal the reviewing court may:
* * *

(3) reduce the degree of the offense of which the appellant was convicted." (134 Ill. 2d R. 615(b)(3).)

Rule 615(b)(3) allows the appellate court to reduce the offense of which a defendant is convicted to a lesser offense where, for example, the evidence failed to prove beyond a reasonable doubt an element of the greater offense. (See *People v. Davis* (1986), 112 Ill. 2d 55, 63, 491 N.E.2d 1153; *People v. Kurtz* (1967), 37 Ill. 2d 103, 111, 224 N.E.2d 817 (applying statutory predecessor of Rule 615(b)(3).) This power is only available where a lesser-included offense is involved. *People v. Pettit* (1983), 114 Ill. App. 3d 876, 883, 449 N.E.2d 1044, *aff'd* (1984), 101 Ill. 2d 309, 461 N.E.2d 991.

Defendants ask us to utilize Rule 615(b)(3) to downgrade the severity of their convictions, not because of any insufficiency in the evidence, but because the minimum sentence prescribed by statute is allegedly too severe under the present circumstances. It is settled, however, that a reviewing court's authority under Rule 615(b)(3) is limited to reducing the degree of the offense where it finds some weakness in the evidence; it cannot do so out of "merciful benevolence." (*People v. Munday* (1985), 134 Ill. App. 3d 971, 977, 481 N.E.2d 338, citing *People v. Mau* (1980), 88 Ill. App. 3d 924, 925, 411 N.E.2d 323.) Where, as here, there is no claim of an evidentiary weakness with regard to any element of the offense charged, there is no basis for reducing the degree of the offense under Rule 615(b)(3). See *Munday*, 134 Ill. App. 3d at 978, 481 N.E.2d at 343.

Defendants maintain that the Appellate Court, Third District, reached a contrary conclusion on this point in *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185. The court in *Coleman* reduced the degree of the offense of which the defendant was convicted after evaluating the evidence "in light of the jury's difficulty to reach a verdict and the trial judge's reluctance to impose the [mandatory] six-year sentence." (*Coleman*, 78 Ill. App. 3d at 993, 398 N.E.2d at 187.) A similar

approach was taken by the third district in *People v. Jackson* (1989), 181 Ill. App. 3d 1048, 537 N.E.2d 1054. It is important to note, however, that in both *Coleman* and *Jackson* the court placed some emphasis on "evidentiary weakness" regarding an element of the offense of which the defendant was convicted. *Jackson*, 181 Ill. App. 3d at 1052, 537 N.E.2d at 1057; *Coleman*, 78 Ill. App. 3d at 993, 398 N.E.2d at 187; see also *People v. Meadows* (1981), 92 Ill. App. 3d 1028, 1032-33, 416 N.E.2d 404 (third district holds that where evidence is not so weak as to raise a reasonable doubt of accused's guilt, trial judge's dissatisfaction with the mandatory sentence will not trigger application of *Coleman*).

■ Despite the arguable implication in *Coleman* and *Jackson* that Rule 615(b)(3) may be utilized by the reviewing court simply to allow for the imposition of a sentence less severe than the statutory minimum, we believe that the authority to reduce an offense under Rule 615(b)(3) is properly exercised only where there is some weakness in the evidence (*Munday*, 134 Ill. App. 3d at 977, 481 N.E.2d at 343) or, in other words, where the evidence is insufficient to prove an element of the offense beyond a reasonable doubt (see *Davis*, 112 Ill. 2d at 63, 491 N.E.2d at 1156-57). To hold otherwise would allow the reviewing court to alter the punishment prescribed by the legislature. It is well established, however, that it is the legislature's prerogative to establish sentences. (*Morris*, 136 Ill. 2d at 161, 554 N.E.2d at 236.) We, therefore, disagree with *Coleman* and *Jackson* to the extent they can be read to suggest, as defendants argue, that Rule 615(b)(3) allows a reviewing court to circumvent the mandatory minimum sentence corresponding to an offense of which a defendant has been proved guilty beyond a reasonable doubt. See *People v. Bartlett* (1980), 91 Ill. App. 3d 138, 142, 414 N.E.2d 253.

Because defendants here raise no contention that they were not proved guilty of home invasion beyond a reasonable doubt, and because the trial court imposed the minimum six-year sentence prescribed by statute, we decline to reduce the offense of which defendants were convicted.

The judgments of the circuit court of Lake County are affirmed.

Affirmed.

UNVERZAGT and NICKELS, JJ., concur.