THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE WILLIAMS, Defendant-Appellant.
First District (3rd Division)   No. 1—89—1251

Opinion filed August 21, 1991.—Rehearing denied November 26, 1991.— Supplemental opinion filed November 27, 1991.

130

Kielian & Walther, of Chicago (M. Jacqueline Walther, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter Hehner, and Edward Maloney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of unlawful restraint and residential burglary. He was sentenced to the minimum four years for residential burglary and two years for unlawful restraint, sentences to run concurrently.

We affirm the convictions.

●■ ■ For residential burglary, the State must prove that the defendant knowingly and without authority entered the dwelling of another with the intent to commit a felony or theft. (Ill. Rev. Stat. 1987, ch. 38, par. 19—3.) Under the State's theory, unlawful restraint was the underlying felony. The felony of unlawful restraint is proven when a person knowingly and without legal authority detains another. Ill. Rev. Stat. 1987, ch. 38, par. 10—3.

On appeal defendant asserts that the conviction for residential burglary should be reversed because (1) the State did not prove the two elements of the statute: (a) that the defendant, without authority, entered the dwelling of another and (b) that he entered the house with the intent to commit the underlying felony; (2) the defendant was denied a fair trial because of the introduction of other uncharged misconduct of defendant; (3) the defendant's cross-examination was unduly restricted; and (4) defendant was improperly convicted of multiple offenses.

Defendant and complainant, Ann Harrison (Ann), jointly owned the residence where the alleged residential burglary occurred. They were married and parties to dissolution of marriage proceedings pending in the circuit court of Cook County.

During the pendency of the matrimonial action, Ann sought and received orders of protection since early 1987, which orders were on several occasions extended in accordance with the appropriate statutory authority.

From time to time defendant visited his children on the premises with Ann's permission and occasionally slept overnight. Occasionally, defendant and Ann engaged in consensual sexual relations as well. For a short period during the pendency of the order of protection,

defendant lived in the residence with the couple's minor children and Ann resided elsewhere, although at the time of the incident upon which his conviction was based, it is clear that defendant was not residing at the subject premises.

On numerous occasions police were called concerning defendant's violation of the order of protection. On these occasions, defendant entered the premises without appropriate permission or in some manner harassed his wife.

Evidence showed defendant knew the protective orders were in place in May 1988 and that Ann renewed the orders without allowing them to lapse. There was further testimony that the defendant was not allowed into the residence without Ann's permission.

On the morning of October 26, 1988, defendant entered the residence by crawling through a basement window. Ann testified that she was in the house at that time preparing to leave when defendant grabbed her from behind and would not allow her to leave. She kept reaching for the door handle, but defendant continued to hold her around the waist. Shortly thereafter, the parties engaged in a violent fight, injuring Ann and ripping her clothes.

Defendant testified that he had been invited by his wife to meet her at the house to discuss reconciliation and upon entering the home he had no intent to commit the alleged underlying felony.

The trial court found that the order of protection was valid and stated it was "crystal clear" that defendant knew and understood the terms of the protective order. The court further determined that defendant's method of entering the house through the basement window "is indicative of the kind of entry made by a person who does not feel he has a right to enter the premises." The trial court indicated and believed Ann's testimony that the defendant had never come on the premises without her permission and that defendant entered the premises with more than mere discussion on his mind.

The residential burglary statute provides as follows:

"A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." Ill. Rev. Stat. 1987, ch. 38, par. 19—3.

Defendant asserts that the State failed to prove that his entry on the day in question was "without authority" or that it was the "dwelling of another."

■ In order to maintain this theory, defendant questions the validity of the order of protection although the record does not disclose that he raised an objection to its admission into evidence during the

trial. Where the defendant fails to interpose an objection to a document during the course of a trial and no issue is raised in a post-trial motion, no issue has been preserved for appeal and defendant has accordingly waived any objections in this regard. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ While we agree with this proposition, we also believe that the order of protection was a valid and subsisting order which clearly directed the defendant be restrained from entering the premises which were previously the marital home of the parties. Ill. Rev. Stat. 1987, ch. 40, pars. 2312—19, 2312—14(b)(2).

Under the Illinois Domestic Violence Act of 1986 (Ill. Rev. Stat. 1987, ch. 40, par. 2311—1 *et seq.*), three types of orders of protection may be issued: plenary, emergency and interim orders. (Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(a).) Defendant contends that the order at issue was an emergency order and, thus, could extend only 14 days in accordance with sections 217 and 220 (Ill. Rev. Stat. 1987, ch. 40, pars. 2312—17, 2312—20). However, there was no evidence in the record indicating this protective order was other than a plenary order under section 219 of the statute. Ill. Rev. Stat. 1987, ch. 40, par. 2312—19.

■ Defendant further suggests that he lacked knowledge of the orders of protection and therefore could not have "knowingly" entered the residence improperly.

A plethora of violent incidents lead us to a contrary view. Time and again the police were called to the residence as a result of defendant's violation of the order of protection, so that it is difficult to imagine that defendant was not aware of these orders of protection even though the extension of the orders may have been *ex parte* in the sense that this defendant did not appear.

Further, defendant relies on *People v. Wilson* (1988), 176 Ill. App. 3d 358, 531 N.E.2d 134, to support his argument that he could not have knowingly broken into a home he jointly owns. In *Wilson*, defendant was the 17-year-old son of the complainant and had lived at his father's house prior to leaving of his own accord to live with his grandmother. A judgment of dissolution of marriage required the father to provide the "primary place of residence" for his children, including defendant. Defendant had not lived at the house for 10 months when he broke in one night and stole items belonging to his father. Although the father had occasionally given permission for defendant to retrieve personal property from the house, defendant had never been given formal notice that he was barred from the house. Since his conviction for residential burglary was set aside on

grounds other than defendant's right to enter the premises, reliance here upon *Wilson* is misplaced.

In *People v. Yager* (1984), 128 Ill. App. 3d 702, 471 N.E.2d 244, a former foster child of the victims was convicted of residential burglary upon entering the residence after he had ceased to use it as his home. In *Yager* and the case at bar, defendants previously had had authority to enter the victims' premises. However, defendants in both cases were unable to show that they had a history of casual entry without permission of the custodial person.

More directly, the Illinois Domestic Violence Act expressly states that the owner of a home may be prohibited from entering the premises if the protected party has a right to exclusive occupancy of the residence. Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(b)(2).

Defendant next contends that he did not have the requisite intent to commit unlawful restraint when he entered the premises. He testified that he merely sought to have a conversation with her at that time and that Ann was not in the house. On the other hand, she testified that she was in the home at that time and that the first knowledge she had of his entry was when he grabbed her from behind and sought to restrain her. Ann further testified that he thereafter physically restrained and injured her, refused to leave and made verbal threats.

■■ Evidence of intent is not usually direct, but proved circumstantially by inferences reasonably drawn from the circumstances of the defendant's conduct. *People v. Toolate* (1984), 101 Ill. 2d 301, 461 N.E.2d 987 (insufficient evidence to infer intent to commit rape as underlying felony for residential burglary charge); *People v. Monigan* (1990), 204 Ill. App. 3d 686, 561 N.E.2d 1358 (intent to commit aggravated battery was properly inferred from the evidence to support residential burglary charge even where defendant entered intending to commit one felony but committed another instead); *People v. Sehr* (1986), 150 Ill. App. 3d 118, 501 N.E.2d 848 (evidence inferred intent to commit theft where defendant broke into stranger's house and walked into master bedroom and claimed he was merely looking for a place to sleep).

Given the circumstances shown in the record, the curious mode of entry, the spontaneous and continued violence towards Ann and the previous history of violence and harassment, the trier of fact was certainly justified in concluding that defendant intended to commit unlawful restraint at the time of his entry to the premises.

The trial court had an opportunity to observe the testimony and demeanor of the witnesses and found Ann to be a credible witness.

Any rational trier of fact could have found the essential elements beyond a reasonable doubt (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453), and the trier of fact must consider the evidence in a light most favorable to the prosecution. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Defendant next argues that the introduction in evidence of other uncharged acts of violence deprived him of a fair trial and may have unduly influenced his conviction.

The prior incidents of violence were properly allowed because they establish that defendant had knowledge of the protective order and showed a pattern of acting in a violent or threatening way toward Ann, thus allowing the trier of fact to draw a reasonable inference as to defendant's intent. Most of the incidents involve defendant either restraining or harassing Ann, or refusing to leave the house. They are sufficiently similar to the incident in question to show a common scheme reflecting defendant's intent. *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183; *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59; *People v. Burgos* (1989), 184 Ill. App. 3d 474, 540 N.E.2d 456.

■ Defense also contends that the trial court unfairly limited its questioning of Wayne and Ann on various issues surrounding Wayne's prior arrests for domestic incidents; on the reconciliation of Wayne and Ann; on the fact that Wayne had not been ordered to pay child support; and on the fact that Wayne believed he might still be married to Ann. The defense argues that these excluded questions somehow relate to theories upon which the defense relies.

Defendant failed to make offers of proof to most of the trial court's rulings which he now finds objectionable. It is difficult to determine whether these rulings were prejudicial to the defendant since an offer of proof is lacking.

While a court does not generally make decisions of this nature lacking an offer of proof in the record (*People v. Sanchez* (1989), 131 Ill. 2d 417, 546 N.E.2d 574), we recognize that an offer of proof is not a formalistic ritual, but an aid to justice and where justice is not served, the requirement of an offer of·proof will not be enforced. *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018.

Where a question obviously indicates its purpose, relevance and materiality and is in proper form or the court understands what the defense is intending to establish, the offer of proof may not be required. *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018; *People v. Husted* (1981), 97 Ill. App. 3d 160, 168, 422 N.E.2d 962.

Even were this court to find that there was an obvious benefit to the trier of fact because of the questions' contents, the questions do not pass the test of relevance. The same rule obtains on those issues where defendant did make offers of proof regarding the possible reconciliation of the parties and the fact that no child support had been imposed upon the defendant. We find that these also do not meet the test of relevance to the issues of this case.

■ Defendant next argues that conviction of residential burglary where unlawful restraint is the underlying felony and conviction for unlawful restraint alone is improper.

In Illinois a defendant may be prosecuted for more than one criminal act that arises from the same episode or transaction, as long as the charges do not arise from the same physical act. (*People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802.) Defendant here committed two separate criminal acts: (1) residential burglary when he entered the house with the intent to commit unlawful restraint, and (2) unlawful restraint when he forcibly detained Ann and would not allow her to leave.

●■ Finally, defendant suggests the residential burglary statute is inappropriate in this circumstance because it is intended only to provide additional protection for home burglaries and argues that his conduct is merely a violation of the order of protection, which is a Class A misdemeanor.

While defendant admits that certain conduct can violate both an order of protection and criminal statutes, he argues that applying the residential burglary statute in this particular situation is contrary to the legislative intent behind the enactment of the residential burglary.

The Illinois Domestic Violence Act of 1986 does not provide that it is an exclusive remedy. (Ill. Rev. Stat. 1987, ch. 40, par. 2312—20.) The residential burglary statute (Ill. Rev. Stat. 1987, ch. 38, par. 19—3) is intended to provide a mandatory jail sentence for violators. The misdemeanor provided in the Domestic Violence Act does not contemplate or sanction commission of a felony. The residential burglary statute is applied equally to all violators, whether the focus of the invasion is theft, rape or another felony. See *People v. Toolate* (1984), 101 Ill. 2d 301, 461 N.E.2d 987; *People v. Monigan* (1990), 204 Ill. App. 3d 686, 561 N.E.2d 1358; *People v. Yager* (1984), 128 Ill. App. 3d 702, 471 N.E.2d 244; *People v. Hawkins* (1984), 125 Ill. App. 3d 520, 466 N.E.2d 299.

Ann's rights to exclusive possession of the premises was founded on the order of protection entered in the pending dissolution case. Residential burglary is an offense against habitation and incorporates

the common law concept of burglary. (*People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517.) The marriage between the resident or custodian and the invader does not create any exception under the statute, nor does their joint ownership obviate the court-imposed restrictions on the defendant. Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(b)(2); 82d Ill. Gen. Assem., Senate Proceedings, May 19, 1981, at 215-27, and House Proceedings, June 17, 1981, at 67-76.

Defendant's conduct matches the conduct prohibited by the residential burglary statute: he was legally excluded from the premises but broke into the house ("enter(ing) the dwelling place of another") and restrained Ann ("with intent to commit therein a felony"). His intent to restrain can be inferred from the circumstances and the history of violence he has shown toward her. Defendant's actions were prohibited by this statute and properly adjudicated under it.

We affirm the trial court's convictions.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

JUSTICE GREIMAN delivered the opinion of the court:

In addition to the issues addressed in our original opinion, defendant has filed a petition for rehearing in which he requests a reduction in the degree of the offense. Defendant recognizes that because he has not previously raised this issue, it would ordinarily be waived. But given the unprecedented application of the residential burglary statute in the context of a violation of an order of protection under the Domestic Violence Act, we choose to address defendant's argument to make certain that all issues are fully examined.

●■ Under Supreme Court Rule 615(b)(3), a reviewing court may reduce the degree of the offense of which an appellant was convicted. (107 Ill. 2d R. 615.) This power is only available where a lesser-included offense is involved and should be used with extreme caution and only in rare instances. (*People v. Kick* (1991), 216 Ill. App. 3d 787, 576 N.E.2d 395; *People v. Jackson* (1989), 181 Ill. App. 3d 1048, 1051-52, 537 N.E.2d 1054; *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185.) Defendant requests that this court reduce his offense to either unlawful restraint or violation of an order of protection. He cites *Jackson* to support his argument that a reduction in offense has previously been made in a residential burglary case to ameliorate the

harshness of the result where, though the evidence was sufficient, the court found evidentiary weakness as to some elements.

All three of the cases acknowledge that there are two relevant factors in assessing the reduction of an offense: (1) whether an evidentiary weakness exists and (2) whether the trial judge expressed dissatisfaction with imposing the mandatory sentence. Both factors were present in *Jackson* and *Coleman*; however, in *Kick*, no evidentiary weakness was apparent and notwithstanding the trial court's reluctance to impose a mandatory sentence, the conviction was affirmed. *Kick*, 216 Ill. App. 3d at 792-93.

*Kick* and other cases state that Rule 615(b)(3) may not be read to allow a reduction in the degree of the offense merely out of a sense of "merciful benevolence." (*Kick*, 216 Ill. App. 3d at 792; *People v. Munday* (1985), 134 Ill. App. 3d 971, 481 N.E.2d 338; *People. v. Mau* (1980), 88 Ill. App. 3d 924, 411 N.E.2d 323.) The *Kick* court observed that it is the legislature's prerogative to establish sentences and Rule 615(b)(3) may not be construed to sanction any circumvention of the mandatory minimum sentence corresponding to an offense of which a defendant has been proven guilty beyond a reasonable doubt. *Kick*, 216 Ill. App. 3d at 793.

●■ We find that a defendant's offense may be reduced only where there is an evidentiary weakness with regard to an element of the offense charged and where the trial judge has expressed dissatisfaction with imposing the mandatory minimum sentence.

In the present case, while there may be some question of defendant's intent as he entered the premises through the basement window, we find no evidence in the record that the trial judge was dissatisfied with the required imposition of the four-year mandatory minimum sentence. Therefore, we find defendant is not entitled to a reduction in degree of the offense of which he was convicted.

The petition for rehearing is denied.

Petition denied.

CERDA, P.J., and RIZZI, J., concur.