THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN JONES, Defendant-Appellant.

First District (4th Division)    No. 1—94—2912

Opinion filed February 13, 1997.

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Richard Devine, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Faustmann, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

After a jury trial, Brian Jones (Jones) was convicted of possession of more than 100 grams, but less than 400 grams, of cocaine with intent to deliver, as well as possession of over 30 grams of cannabis.

Jones was sentenced to the minimum mandatory sentence of nine years in prison on the possession with intent to deliver offense.

Throughout trial and sentencing, the trial judge repeatedly expressed dissatisfaction with the mandatory sentencing requirement. Noting Jones' education and work history, his lack of criminal background, and his supportive wife and family, the judge characterized Jones as "salvageable." A long period of incarceration was not indicated in this case, said the judge. He would sentence Jones to probation if it were available. Despite the trial judge's expressed discomfort with the gravity of the charge, the State insisted on pursuing it.

Jones asks this court to use its authority under Supreme Court Rule 615(b)(3) to reduce his cocaine conviction to simple possession of a controlled substance. 134 Ill. 2d R. 615(b)(3). He agrees the evidence was sufficient to support the jury's guilty verdict, but contends there was an "evidentiary weakness" in the intent to deliver element, making a reduction to the lesser included offense an available remedy for an "unduly harsh" sentence.

The question is whether we are empowered to reduce the degree of the offense where the State has presented enough evidence of all the essential elements of the offense to support the conviction.

We conclude we do have that power, but under limited circumstances. Our examination of the record persuades us this is not an appropriate case for reduction of the degree of the offense.

FACTS

Jones was charged by complaint and superseding indictment with delivery of more than 1 gram but less than 15 grams of cocaine, unlawful possession of more than 100 grams but less than 400 grams of cocaine with the intent to deliver, and unlawful possession of more than 30 grams of cannabis with the intent to deliver. The events which led to Jones' arrest took place in March 1990. Trial did not begin until May 1994.

At trial, Officers Anthony Bertucca and Steven Bocconcelli testified they were Chicago police officers stationed at the 23rd District. On March 31, 1990, they began their shift at about 6 p.m. On arrival at the station, they learned an informant told their supervisor a drug transaction would take place that evening at 708 Bittersweet in Chicago. The informant said the buyer would be driving a new Grand Prix automobile with license number RD9144.

Based on this information, the officers took up surveillance of the apartment building at 708 Bittersweet at about 8:15 that evening. Between 8:30 and 9 p.m. the officers observed a white Grand Prix,

with license number RD9144, park in front of the apartment building. A man, later identified as Timothy McCarthy, exited the car and entered the building at 708 Bittersweet.

Officer Bertucca testified that, while standing on the sidewalk near the entrance to the building, he watched as McCarthy went up the five stairs to the front door and then through two sets of glass doors to the lobby of the building. Inside the building, McCarthy went outside the officer's line of vision for about two minutes. When McCarthy reappeared, he stood in the hallway where he was soon approached by a man later identified as Jones.

Officer Bertucca testified that he witnessed Jones hand McCarthy a briefcase. McCarthy then gave Jones some money, which Jones "rippled through." After the exchange of money, said Officer Bertucca, Jones handed McCarthy "two clear plastic bags of crushed white powder."

After this transaction, McCarthy left the building and Officer Bertucca followed. When McCarthy was a short distance from the building, Officer Bertucca stopped him and arrested him.

Officer Bocconcelli testified that he had been standing across the street during the surveillance. He did not witness any exchange but joined Officer Bertucca when he stopped McCarthy. Officer Bocconcelli said that he advised McCarthy of his rights as Officer Bertucca reached into McCarthy's pocket and recovered two small (two inches by two inches) plastic bags of what was suspected to be cocaine, *plus* a larger bag of what appeared to be marijuana.

After arresting McCarthy, the officers accompanied McCarthy to the fifth floor of the apartment building. As they exited the elevator on the fifth floor, the officers said, McCarthy pointed out Jones, who was in the hallway pushing a cart with cleaning products in it. Officer Bertucca said he recognized Jones as the man he had seen downstairs with McCarthy. The officers identified themselves to Jones and arrested him.

Officer Bocconcelli said he advised Jones of his rights and Jones acknowledged that he understood them. Jones, both officers said, agreed to speak with them and admitted that he sold cocaine to McCarthy. Jones also told them that he had more cocaine in his apartment. Jones then unlocked the door to apartment 513 and directed the officers to a kitchen cabinet where, they said, he told them he kept some cocaine for "his own use." From the kitchen cabinet, Officer Bocconcelli recovered a clear plastic bag of what appeared to be cocaine.

After discovering the bag of suspected cocaine in the kitchen cabinet, Officer Bertucca said he noticed some money on the kitchen

table. He asked Jones about this money and, he said, Jones responded that this was the money he received from McCarthy.

The officers also testified that Jones asked if he could put on some shoes before leaving the apartment building. For this reason, they accompanied him into another part of the apartment. In the living room, underneath a coffee table, the officers said they observed an open canvas gym bag. Exposed at the top of the canvas bag was a clear plastic bag containing crushed green plant matter. Officer Bocconcelli picked up the plastic bag and discovered a bag containing a larger amount of white powder underneath it. Officer Bocconcelli testified that when he asked Jones, "What's this?" Jones replied, "Okay, I've only been dealing for a few weeks." Jones then was taken to the police station.

Both officers testified that apartment 513 was in disarray and looked as if someone was moving in or out. It was suggested, during cross-examination, that Jones was moving from another apartment in the building, apartment 904. The officers admitted that they learned Jones was moving from apartment 904 and that this second apartment was never searched by the police.

The only other witness presented at trial was Grace Odibo-Harlan, a chemist for the Chicago police lab. She testified that on April 9, 1990, she weighed and conducted laboratory tests on the two packets of white powder recovered from McCarthy. She said these two packets contained 3.09 grams and 2.458 grams, respectively, of a substance which tested positive for cocaine.

She retested the samples on December 24, 1992. On this occasion, she said, the two samples weighed 3.35 grams and 2.88 grams, respectively, and again tested positive for the presence of cocaine. Later, on January 21, 1993, she did a quantitative analysis on these samples. This analysis indicated that the samples were 71% pure cocaine and 72% pure cocaine, respectively.

It then was stipulated that other chemists, if called, would testify: the bag of white powder found in the kitchen cabinet of apartment 513 contained 20.76 grams of a substance that tested positive for the presence of cocaine; the bag of green leafy substance found in the canvas bag contained 281.1 grams of marijuana; the bag of white powder found in the canvas bag contained 127.65 grams of a substance containing cocaine; and the bag of white powder found in the canvas bag was tested and found to be 22.43% pure cocaine.

The defense presented no witnesses.

The jury returned a verdict finding Jones guilty of possession of more than 30 grams of cannabis and possession of more than 100 grams of cocaine with the intent to deliver, but not guilty of delivery of cocaine or cannabis.

At the sentencing hearing, when hearing evidence in aggravation, the judge agreed that Jones had "a large amount of cocaine to sell." Nevertheless, he said, Jones was "salvageable." The evidence of mitigation showed that Jones had no prior criminal record, was married, had a college degree, and had nearly completed studies to be a certified public accountant. Jones had been involved in several community activities. The judge expressed his belief that the mandatory nine-year minimum sentence was not "the right sentence for him." The judge said:

> "[I]f I had the ability, there certainly is an appropriate sentence for Brian Jones, which includes a probationary period with community help ***.

> * * *

> *** [T]here's no question in my mind that the minimum sentence required by law in this particular case is not the appropriate sentence, but I refuse to violate the law, I will follow the law."

Jones was sentenced to the nine-year minimum sentence required by law and placed on bond pending appeal.

OPINION

The trial judge had no choice. He had to sentence the defendant to at least the minimum sentence mandated by statute. See *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 490 N.E.2d 1288 (1986). But once the case is on appeal, different rules apply. Supreme Court Rule 615(b)(3) provides:

> "(b) Powers of the Reviewing Court. On appeal the reviewing court may:

> * * *

> (3) reduce the degree of the offense of which the appellant was convicted." 134 Ill. 2d R. 615(b)(3).

Nothing in the rule or in the commentary to the rule guides the exercise of the power granted by Rule 615(b)(3). Nor do we find clear consistency in the decisions interpreting the rule. We have been told that other sections of Rule 615 "are to be construed according to their plain language [citation], and should not be interpreted in a fashion that renders their terms meaningless or superfluous [citation]." *People v. Jones*, 168 Ill. 2d 367, 375, 659 N.E.2d 1306 (1995).

Some courts have held Rule 615(b)(3) applies only where the evidence is insufficient to prove an element of the offense beyond a reasonable doubt. See *People v. Kick*, 216 Ill. App. 3d 787, 576 N.E.2d 395 (1991). That is, first the court finds the State failed to prove the

greater offense beyond a reasonable doubt, then it uses Rule 615(b)(3) to reduce the degree of the offense. See *People v. Crenshaw*, 202 Ill. App. 3d 432, 437, 559 N.E.2d 1051 (1990).

We note that the power of an appellate court to reverse a conviction is contained in Rule 615(b)(1). Our Rule 615(b)(3) power to reduce the degree of an offense is separate and apart. It is not made dependent on reversal of a conviction.

Several appellate decisions have recognized a carefully circumscribed power to reduce the degree of an offense despite the existence of enough evidence to prove the essential elements of an offense. In three of these cases, the degree of offense was reduced.

In *People v. Plewka*, 27 Ill. App. 3d 553, 327 N.E.2d 457 (1975), two defendants, age 17 and 20, were found guilty in a bench trial of indecent liberties with a 15-year-old girl. The defendants admitted sexual intercourse with the complainant but claimed they believed she was 16, a defense to the indecent liberties charge. The court held the trial judge's finding that the defendants' beliefs were unreasonable "cannot be criticized," but it used Rule 615(b)(3) to reduce the convictions to contributing to sexual delinquency because the felony penalties were "unduly harsh." *Plewka*, 27 Ill. App. 3d at 558.

*Plewka* was cited in *People v. Coleman*, 78 Ill. App. 3d 989, 398 N.E.2d 185 (1979). Mary Coleman, a prostitute, was found guilty of armed robbery of one of her customers and sentenced to the mandatory minimum of six years. The trial judge expressed reluctance to impose the six-year sentence. Seizing on the customer's uncorroborated testimony about the presence of a knife, evidence characterized as "extremely weak if not fatally weak in establishing beyond reasonable doubt that a knife was present," the court reduced the offense to robbery, saying:

> "The power granted by Supreme Court Rule 615(b)(3)[, ](4) should be exercised with caution and circumspection, but the fact that such powers have been granted to a reviewing court is indicative of the fact that our supreme court recognizes that situations have arisen in the past and will arise in the future where an appellate court must in the interest of fair and uniform administration of justice exercise the powers granted by the rule." *Coleman*, 78 Ill. App. 3d at 992-93.

The trial judge in *People v. Jackson*, 181 Ill. App. 3d 1048, 537 N.E.2d 1054 (1989), expressed misgivings about having to sentence the defendant to four years for a residential burglary. The defendant had admitted he entered the apartment and took a small amount of money but denied he intended to commit theft when he made his entry. His purpose, he said, was to do some work on a toilet in the

apartment. He worked for the landlord and had keys to all the apartments.

The court reduced the offense to criminal trespass to a residence, the only available lesser included offense. The court found the two necessary relevant factors for a "rare instance" of application of Rule 615(b)(3): "whether an evidentiary weakness exists and whether the trial judge expressed dissatisfaction with imposing the mandatory sentence." *Jackson*, 181 Ill. App. 3d at 1051. The court found that the State's intent evidence was not "fatally weak," but "nevertheless weak." *Jackson*, 181 Ill. App. 3d at 1051-52.

Several appellate decisions reflect acceptance of the idea that the scope of Rule 615(b)(3) extends beyond the general principle that a conviction will not be disturbed on appeal unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837 (1991). But, for one reason or another, these courts have declined to exercise their power to reduce the degree of an offense. See *People v. Mata*, 243 Ill. App. 3d 365, 611 N.E.2d 1235 (1993) (outright reversal preferred where State did not charge the lesser offense); *People v. Williams*, 222 Ill. App. 3d 129, 582 N.E.2d 1158 (1991) (while evidence of intent was questionable, no indication trial judge expressed dissatisfaction with the mandatory minimum sentence); *People v. Munday*, 134 Ill. App. 3d 971, 481 N.E.2d 338 (1985) (while trial court was troubled by mandatory minimum sentence, no evidentiary weakness in residential burglary conviction was apparent).

■ We join the line of cases that holds Rule 615(b)(3) authorizes us to reduce the degree of an offense despite the presence of evidence sufficient to support a guilty verdict. We understand that power is to be used with "caution and circumspection" (*People v. Coleman*, 78 Ill. App. 3d at 992) and not "purely out of merciful benevolence" (*People v. Mau*, 88 Ill. App. 3d 924, 925, 411 N.E.2d 323 (1980)). The use of Rule 615(b)(3) when the evidence is sufficient to support a conviction should be a "rare instance." *Jackson*, 181 Ill. App. 3d at 1052. We must be aware of our obligation to give deference to the trier of fact. *People v. Furby*, 138 Ill. 2d 434, 455, 563 N.E.2d 421 (1990). We must bear in mind that it is the legislature's prerogative to establish sentences, not ours. See *People v. Morris*, 136 Ill. 2d 157, 161, 554 N.E.2d 235 (1990).

It is easy to determine whether the trial judge has misgivings about imposing a mandatory minimum sentence. The trial judge in this case clearly did not want to sentence Jones to nine years in prison. Further, we have no trouble finding a lesser degree of offense

in this case—simple possession. But the requirement of an "evidentiary weakness" takes us into a kind of shadow area, without clear boundaries or guidelines.

In *Jackson*, the evidentiary weakness was not the result of conflicts between State and defense testimony. There was no serious credibility issue. The operative fact was that the State's evidence "showed little inconsistency with the defendant's testimony that he formulated the requisite intent after he entered the apartment to perform maintenance work." *Jackson*, 181 Ill. App. 3d at 1052.

In *Coleman*, the knife allegedly used in the robbery never was found, although the defendant was arrested soon after the event. There was little corroboration of the victim-customer's testimony about a knife. And the court found it significant that the jury first announced it could not reach a verdict, then reached one after being given the *Prim* instruction for deadlocked juries.

In *Plewka*, the defendants were acquitted of rape. This meant, said the court, the trial judge did not believe the complainant's story that the intercourse was against her will. In fact, she was "sexually sophisticated" and a few months short of 16. Under these circumstances, imposition of a four-year mandatory sentence for indecent liberties was "unduly harsh." *Plewka*, 27 Ill. App. 3d at 558.

Whatever "evidentiary weakness" means, it has to be something that causes us to have grave concern about the reliability of the guilty verdict. Something is "weak" when it is lacking or deficient in strength. Webster's Deluxe Unabridged Dictionary (2d ed. 1979). There is little point in trying to frame a more precise definition of the "evidentiary weakness" standard. We have to hope we will know it when we see it.

■ Placing the evidence in this case against that standard, we do not find the kind of evidentiary weakness that would cause us to reduce the degree of the offense.

The intent to deliver a controlled substance typically is proved by circumstantial evidence. *People v. Friend*, 177 Ill. App. 3d 1002, 1021, 533 N.E.2d 409 (1988).

Here, Jones possessed 20.76 grams of cocaine found in the kitchen cabinet and 127.65 grams of cocaine found in the canvas bag—a total of 148.41 grams or about 5.2 ounces.

That is more than twice the 54.28 grams that "certainly exceeded that used for personal consumption" in *People v. McBee*, 228 Ill. App. 3d 769, 777, 593 N.E.2d 574 (1992), and far more than the 25 to 30 grams of cocaine that supported an inference of intent to deliver in *People v. Munoz*, 103 Ill. App. 3d 1080, 432 N.E.2d 370 (1982). See also *People v. Romero*, 189 Ill. App. 3d 749, 546 N.E.2d 7 (1989) (36.9

grams of cocaine held to be in excess of amount that could be designed for personal use). More recently, we held that possession of about 50 grams of cocaine was enough, by itself, to establish an intent to deliver. *People v. Walensky*, 286 Ill. App. 3d 82 (1996).

The defendant's claim of evidentiary weakness rests on the lack of evidence to support an inference of intent to deliver. He did not possess the items normally associated with drug dealing, such as scales, baggies, or substances used to "cut" the cocaine. He had no weapons. No drug paraphernalia was found in his apartment. Nor did the State offer any expert testimony that would tell the jury what amount of cocaine was too great to be possessed for personal use only. In addition, the cocaine recovered from Jones was less pure (22.43%) than the cocaine recovered from McCarthy (71% to 72%).

Jones' admission to the police strengthened the State's case. While he said the cocaine in the kitchen cabinet was for his own use, when confronted with the cocaine in the open gym bag he purportedly said: "Okay, I've only been dealing for a few weeks."

The jury carefully picked through the charges. It did not accept the State's case concerning the delivery to McCarthy but found the evidence sufficient to support the possession with intent to deliver charge. We do not believe the guilty verdict reflects the kind of evidentiary weakness that should trigger the exercise of our power under Rule 615(b)(3). We reserve the use of that power for that rare case where it is required by the "interest of the fair and uniform administration of justice." *Jackson*, 181 Ill. App. 3d at 1051.

CONCLUSION

We decline to reduce the degree of offense because we do not find the "evidentiary weakness" that would allow us to reduce the degree of offense where the trial judge felt strong misgivings about having to impose a mandatory minimum sentence. It is not our role to question the wisdom of the legislature that established the mandatory minimum. Nor can we require the State to file charges we might believe would better serve a fair and uniform administration of justice. The defendant's conviction and sentence are affirmed.

Affirmed.

McNAMARA and BURKE, JJ., concur.